LEONARD v. STATE.

Opinion delivered January 11, 1926.

1. CONTEMPT—ORDER DIRECTING PAYMENT OF MONEY.—Where a complaint seeking to impound assets of a debtor alleged that he had "considerable assets" in his hands, consisting of notes aggregating over $13,500, and had entered into a scheme to defraud his creditors by placing his assets beyond their reach, and the answer denied such allegations, an order of the court that the debtor pay into the court $5,000, and that he would be in contempt of court if he failed, was erroneous when made without allegation or proof that the debtor had any such amount of money in his possession.

2. JUDGMENT—LIEN ON LANDS FRAUDULENTLY CONVEYED.—Where a debtor had conveyed land fraudulently before the rendition of a judgment, the judgment was not a lien thereon.

3. EXECUTION—RETURN OF NULLA BONA—LIEN.—No lien on lands fraudulently conveyed is fixed by a return of *nulla bona* to an execution.

4.  CONSTITUTIONAL LAW—IMPRISONMENT FOR DEBT.—A judgment
    imprisoning a debtor for disobeying an order requiring payment
    of a specific sum into court, without finding that he had such
    sum in his possession, amounted to imprisonment for debt, in
    violation of Const., art. 2, § 16.

Appeal    from    Independence    Chancery    Court;
*Lyman F. Reeder,* Chancellor; reversed.

*W. K. Ruddell* and *Cole & Poindexter,* for appellant.

*H. W. Applegate,* Attorney General, and *John L.
Carter,* Assistant, for appellee.

*S. M. Bone* and *S. M. Casey,* of counsel.

WOOD, J.  On the 13th of August, 1924, Lawrence
McSpadden filed a complaint in the Independence County
Chancery Court in which he alleged that he had obtained
a judgment against T. F. and Virgie Leonard in the sum
of $5,000, and that an execution had been issued and re-
turned *nulla bona,* and that the judgment was wholly un-
satisfied; that on the 12th of July, 1924, a few days before
the rendition of the judgment, Leonard and wife had
made certain fraudulent conveyances of their property
in which they took the notes of the purchasers instead
of money, the notes amounting in the aggregate to $13,-
500; that the defendants had thus systematically and pre-
meditatedly entered into a scheme or plan for the pur-
pose of placing their property beyond the reach of their
creditors; that the defendants had considerable assets,
consisting of money and notes, concealed for the purpose
of avoiding payment of plaintiff's judgment.  The
prayer of the complaint was that the defendants be sum-
moned to answer the complaint under oath, and that they,
and each of them, be required to make a full disclosure
of all the assets and property belonging to them, and that
they be required to deliver said property in court in sat-
isfaction of plaintiff's judgment, and that the convey-
ances of the lands made by the defendants be canceled,
and that the lands be sold to satisfy plaintiff's judgment.

T. F. Leonard answered and admitted that he had
made certain conveyances of lands as alleged in the com-
plaint, but denied that these conveyances were made for

the purpose of defrauding his creditors, and alleged in substance that the notes given for the purchase money had been disposed of by him prior to the service of the writ upon him in the present action, and alleged that he was a citizen of Texas, and that he had no money except a few hundred dollars on his person; that he had no property within the State of Arkansas at the time of the service of summons upon him in this action. He denied that he had entered into any scheme or plan to defraud creditors by making fraudulent conveyances of his property or concealing any of his assets for the purpose of avoiding the payment of the plaintiff's judgment. He concluded his answer by offering to make any further disclosures that the court might desire under oath, and asked that the plaintiff's complaint be dismissed.

The cause was heard upon the above pleadings and oral testimony, and the court made the following findings: That the defendant, T. F. Leonard, left the State of Arkansas after the service of summons on him in this cause and after the rendition of judgment against him and Virgie Leonard for $5,000 on July 15, 1924, in this court, and further found that he converted his property here into liquid assets consisting of moneys, notes and county warrants in a sum far in excess of the amount of the judgment, interest and costs which had been rendered against him and the defendant, Virgie Leonard; that the defendant Virgie Leonard permitted the defendant T. F. Leonard to take her property with him from the State of Arkansas, and that neither of them have any property in the State of Arkansas subject to execution or to the payment of the plaintiff's judgment, and the court found that the defendant, T. F. Leonard, should turn over and pay into this court the sum of $5,000 with interest thereon from July 15, 1924, at six per cent. interest to date of payment, and the costs of said suit, including this suit, in the sum of $238.95.

Upon the above findings of fact the court then rendered the following judgment: "It is therefore con-

sidered, ordered and decreed by the court that the defendant, T. F. Leonard, do pay into the registry of this court, or to the clerk thereof, the above-named sum of $5,000, with interest at six per cent. per annum from July 15, 1924, to date of payment, and the sum of $238.95 costs to date, on or before, and not later than October 1, 1924, in satisfaction of said judgment, interest and costs, and, upon his failure so to do by the date aforesaid, he shall be and is hereby adjudged in contempt of this court, and the clerk of this court is hereby directed to issue proper citation and warrant for his arrest that he may be brought before this court to be dealt with in such manner and upon such terms as the court may then deem suitable and proper.'' From the above decree the defendant Leonard prayed an appeal, but did not perfect the same.

On the 8th of October, 1924, the plaintiff McSpadden applied to the chancery court for a citation and warrant of arrest for T. F. Leonard for contempt of court, and the court issued an order citing Leonard to appear before the court to answer the charge of contempt, and a warrant directing the sheriff to arrest him and bring him before the court. Leonard responded to the citation for contempt, setting up that he disclaimed any intentional or wilful failure to comply with the orders of the court. He alleged that the court was without jurisdiction to render the decree of the 12th of September, 1924; that he did not have in his possession at the time the decree was entered or at any time subsequent thereto the sum of money he was directed to pay into court, and that it was physically impossible for him to comply with the order and judgment of the court. He set up that the debt which the plaintiff was seeking to collect was a debt due on contract, and also that, subsequent to the judgment and subsequent to the order adjudging the defendant in contempt, he had been adjudged a bankrupt by the District Court of the United States for the Eastern District of Texas, and had received his discharge in bankruptcy,

and that therefore the chancery court was without jurisdiction to proceed further against him on the trial of the citation for contempt.

The court, after hearing the testimony, found "that the defendant, T. F. Leonard, wilfully and deliberately and without any excuse, violated the order of this court made on September 12, 1924, directing him to pay into this court the sum of $5,000 and the costs of this court in satisfaction of the judgment of Lawrence McSpadden, and the court finds that, at the time of the order made requiring the defendant Leonard to turn over and pay into the registry of this court said sum, he had then more than that amount of money and property which were the proceeds of notes and scrip which he had fraudulently taken away from the State to the State of Texas, and of which he had made fraudulent transfer to one Hargrove, in the State of Texas, and in violation of and notwithstanding this order of the court the defendant continued to dispose of said property and make way with it, and made no effort to comply with the order of this court, and the court finds that his subsequent voluntary bankruptcy and pretended insolvency in the State of Texas was not *bona fide,* and the court finds that he has now in his possession and under his control property and assets of the value of $4,500 or more, which is the proceeds of some of the property that he took away from here in August, 1924, and which property belonged to his wife, Virgie Leonard, or the defendant, and that it should be paid into this court to satisfy the prior order of this court, and that the defendant T. F. Leonard is in contempt of this court in failing to comply with the order of this court aforesaid, and that he has failed to purge himself of such contempt." The court thereupon found that Leonard was in contempt of court, and entered a judgment committing him to the Independence County jail "there to remain until he shall pay into this court the sum of $4,500 to be applied as provided by the order of this court on September 12, 1924, together with

all costs of this action,'' from which judgment defendant duly prosecutes this appeal.

McSpadden admitted that the debt sought to be collected by this proceeding was a debt due on contract. It was also admitted that on February 11, 1925, T. F. Leonard was adjudged a bankrupt in the United States District Court for the Eastern District of Texas, and that subsequent thereto he was duly discharged as a bankrupt. The court erred in holding that the appellant was guilty of contempt in violating its order of September 12, 1924. The allegations of the pleadings and the findings of the trial court upon which that order was based show that the court was without jurisdiction to enter such order. The material allegations of the complaint are set forth above. They show that McSpadden had obtained a judgment against Leonard and his wife in July, 1924, for $5,000, and that before such judgment was rendered Leonard and his wife had made certain fraudulent conveyances of land in Independence County and certain personal property for the purpose of defrauding McSpadden; that the purchasers had executed their notes in the aggregate sum of $13,500; that Leonard and wife had systematically and premeditatedly entered into a scheme and plan for the purpose of placing their property beyond the reach of their creditors, and especially McSpadden; that they had considerable assets consisting of money and notes concealed for such fraudulent purposes. The prayer of the complaint was for a discovery of such assets in the hands of Leonard and wife, and for the canceling and setting aside the fraudulent conveyances of the land and the sale of the same to satisfy McSpadden's judgment, and for all proper relief.

Leonard answered admitting the conveyances alleged, but denied that they were fraudulent, and alleged that he had sold the notes executed in payment for the property conveyed and had not any interest in the same, and that he had sold the notes in good faith and with no intention to defraud his creditors, and that he had had

no interest in these notes since the service of process upon him. He denied specifically that he had entered into any scheme or plan to defraud McSpadden.

It will thus be seen that McSpadden did not allege that Leonard had any specific amount of money in his hands or any particular notes which should be impounded for the purpose of satisfying the judgment which he held against Leonard. The allegations were general to the effect that he had considerable assets consisting of money and notes, which Leonard should be required to reveal in order that they might be impounded and subjected to McSpadden's judgment. The general allegations of the complaint were not aided by any allegations of the answer, for Leonard denied that he had any assets "except such money as he had on his person, amounting to probably a few hundred dollars." We deem it unnecessary to set forth the testimony which was heard by the court upon the issues thus joined, for the reason that the findings of fact by the court from the testimony adduced were in their nature as general as the allegations of the pleadings, to-wit: that Leonard had "converted his property here into liquid assets consisting of moneys, notes and county warrants in a sum far in excess of the amount of the judgment." The allegations of the complaint show that, before the rendition of the judgment which McSpadden is seeking to have satisfied, the Leonards had fraudulently conveyed their lands in Arkansas. Therefore, such judgment was not a lien on these lands. *Doster* v. *Manistee National Bank,* 67 Ark. 325; *Sears* v. *Sester,* 111 Ark. 11. The allegations further show that, at the time of the institution of the action to uncover and sequester assets, in which the order of September 12, 1924, was made, no lien had been fixed on these lands by the levy of an execution because it is alleged that the execution had been returned *nulla bona.* See *Merchants' & Farmers' Bank* v. *Harris,* 113 Ark. 100. There was no legal inhibition upon the Leonards from disposing of their property in any manner they saw fit. It will be ob-

served that the court, in the action to discover and impound assets, found generally ''that Leonard had converted his property here into liquid assets, consisting of moneys, notes and county warrants in a sum far in excess of the amount of the judgment, interest and costs,'' but the court did not find that Leonard had in his possession the sum of $5,000, or any other specific sum as the proceeds of fraudulent conveyances. The court found that Leonard had notes and county warrants in his hands, but in its order the court did not sequester these. Without finding that Leonard had the specific sum of $5,000 in his hands, or any other particular sum, the court simply found and directed that he ''should turn over and pay into this court the sum of $5,000, with interest thereon from July 15, 1924, at six per cent. to the date of the payment, and the costs of the suit in the sum of $238.95.'' The legal effect of the above findings and order of the court was to say to Leonard, ''You have fraudulently converted your property into liquid assets in excess of the amount of McSpadden's judgment against you, and, unless you pay the amount of such judgment with interest thereon and the costs of the suit on or before the first day of October, 1924, you will be adjudged in contempt of court,'' and, unless he complied with the order, the clerk of the court was authorized to issue proper citation and warrant for his arrest, to be brought before the court to be dealt with as for contempt.

These findings and this order were made in the face of the allegations of Leonard in his answer, and without any proof to the contrary, so far as this record discloses, that he had no property in the State of Arkansas except such money as he had on his person, amounting to probably a few hundred dollars. Now, under the decisions of this court, the Independence County Chancery Court, under its own findings of fact, was wholly without power to direct Leonard to pay into the registry of the court the specific sum of $5,238.95, the amount of the McSpadden judgment, interest and costs, and to adjudge that he

would be in contempt of court if he failed to do so. Because the court had not found as matter of fact that Leonard had in his possession and under his control at the time the order was made the specific money or property which he was directed to bring into the registry of the court. *Meeks* v. *State,* 80 Ark., 579; *Hand* v. *Haughland,* 87 Ark. 105; *Dodson* v. *Butler,* 101 Ark. 416. See also *Lane* v. *Alexander,* 168 Ark. 700. In the last case we said, ''Of course, the judgment would be erroneous unless it was shown that appellant had possession of the property and was able to comply with the court's order.''

In *Dodson* v. *Butler, supra,* we said: ''But this power to punish as in cases of contempt for disobedience of such order of restitution only applies where the court has first found that the specific property, or the specific funds, are in the possession or under the control of the person ordered to make restitution thereof at the time of the trial.'' In *Martin* v. *State,* 162 Ark. 282, we held: ''This court is committed to the doctrine that one cannot be held in contempt for disregarding a void order or judgment.'' A correct general statement of the rule is found in 23 C. J., at page 896, as follows: ''It is a good defense to an application to punish for a contempt that the order or direction charged to have been disobeyed or violated was made without authority or jurisdiction.'' Numerous cases are here cited in note to support the text.

It is admitted of record that the debt which was the basis of the McSpadden judgment which he is seeking to have satisfied was one by contract. The citation for contempt under which the judgment of imprisonment herein appealed from was rendered was bottomed on an alleged disobedience of the order of the chancery court of September 12, 1924. That order, as we have seen, was without authority, erroneous and void. We have not overlooked the provisions of §§ 4366 to 4371 of Crawford & Moses' Digest, which learned counsel for the State cite to sustain the judgment against Leonard for contempt. But, under the facts as found by the trial court upon

which the order of September 12, 1924, was predicated, those sections have no application, and can not be invoked to sustain the trial court's judgment against Leonard for contempt. It occurs to us that under the facts of this record the proceeding of the trial court which resulted in a judgment committing Leonard to imprisonment in the county jail are, in their last analysis, but an imprisonment for debt, which is expressly forbidden by our Constitution except in cases of fraud. Art. 2, § 16, Constitution.

This case, on the issues raised by the pleadings and the findings of the trial court upon which the order of September 12, 1924, was predicated, does not come within the exception.

It follows that the judgment must be reversed, and the same is hereby quashed and held for naught, and the sheriff and jailer of Independence County is ordered, if Leonard be still held in custody, to release him therefrom.