Delbert DEAN *v*. STATE of Arkansas

CR 74-174 522 S.W. 2d 421

Opinion delivered April 28, 1975
[Rehearing denied May 27, 1975.]

*Don Langston*, Public Defendant, by: *Hubert Graves,* Deputy, for appellant.

*Jim Guy Tucker*, Atty. Gen., by: *Gary Isbell,* Asst., for appellee.

CONLEY BYRD, Justice. The State charged that the appellant, Delbert Dean, committed the crime of false pretenses on or about August 20, 1973, by making false and fraudulent pretenses and representations, and obtained thereby $2,500.00 from one Billy J. Helms.

At the trial Helms testified that he and the appellant worked together, that the appellant talked of profits he made buying and selling cattle with a Mr. Whitmire, and that he asked appellant to invest his money in cattle. The appellant said he would first have to obtain Mr. Whitmire's approval. The appellant later said that Mr. Whitmire approved and Helms tendered the money to the appellant.

The appellant later told Helms about the cattle he had bought and that two had "calved". Weeks later Helms needed money for car repairs and appellant told Helms to have the work done, that appellant would sell the calves and would bring Helms the money.

Some two months later when appellant's employment had been terminated and no money was forthcoming, Helms became suspicious. After twice attempting to find the cattle by following appellant's directions, Helms contacted appellant about pointing the cattle out to him. Helms, some of Helms' relatives, Sheriff Cauthron of Sebastian County, and appellant went to South Sebastian County for appellant to point out Helms' cattle. They walked out in a pasture where there were some cattle. Appellant said he could not say which were Helms' cattle and the others waited while he went to a house to get the man who could. He returned saying the man was not at home.

The State, over defendant's objection, produced Mrs. Hamilton who was at the house and who testified that appellant did not ask about cattle, but said he was "stuck".

The jury found the defendant guilty and fixed his punishment at three years in the Arkansas Department of Corrections. From the judgment and sentence thereon appellant appeals and assigns as error the following points.

"POINT I. The Court erred in refusing to direct a verdict for the defendant at the close of the State's case because there was no proof of a misrepresentation of a fact which existed on or before August 20, 1973.

POINT II. The Court erred in refusing to direct a verdict for the defendant because there was no proof that any fact represented by the defendant was untrue.

POINT III. The Court erred in refusing to give the second paragraph of Defendant's Requested Instruction.

POINT IV. The Court erred in permitting the Prosecution to adduce evidence by one witness on direct examination that the defendant went up to a house to get someone to point out which cattle in a pasture were owned by the prosecuting witness, and returned saying the man who could identify the cattle was not there; and, then permitting the State to adduce evidence on direct examination by another witness - a woman who was in the house - that the defendant came to the house, did not ask about cattle, but said that he was 'stuck' when the incident referred to occurred two and one-half months after the offense charged was alleged to have happened was a collateral matter."

POINTS I and II. We find no merit in appellant's contention that there was no proof of the misrepresentation of an existing fact. Helms testified that appellant represented that he was in the cattle business with a Mr. Whitmire and that they had some cattle at that time. When Helms indicated a desire to make a profit in the cattle business, appellant stated that he would have to consult with Mr. Whitmire about Helms going in business with them. Subsequently, but before receiving the $2,500.00, appellant told Helms that Mr. Whitmire had said it would be all right for Helms to go in the cattle business under the arrangements appellant had discussed.

After appellant had failed to point out the cattle to the sheriff, he had a conversation with Tom Robertson, Helms' lawyer. Tom Robertson testified as follows:

"Q. And what conversation did you have at that time?

A. Well, I asked Mr. Dean what was going on. I told him that I was concerned about my client's money.

Q. Did you have knowledge at this time of the weekend transaction down at Greenwood?

A. Yes, my client had advised me of that, and I confronted Delbert with this. And at that time he told me that there weren't any cattle. I asked him, I said, 'well, Delbert, what did you do with the money?' and he said 'I don't know what I did with the money.' I said, 'you didn't buy anything?' 'I just spent the money, I'm always needing money.' And he also advised me that he was not in the cattle business with Albert Whitmire, and he admitted that the cattle he had shown them in Greenwood were not his cattle. As I recall, he didn't know whose cattle they were."

Albert Whitmire called as a witness by appellant, testified on direct that he did not remember any conversation with appellant about buying any cattle for someone else.

We hold that the foregoing proof constituted substantial evidence to go to the jury on the misrepresentation of an existing fact.

POINT III. Appellant specifically asked the trial court to give the last paragraph of his requested Instruction No. 1 which provides:

"You are instructed that the misrepresentation cannot relate to future conduct even if it is accompanied by a present intention not to perform the promise."

The trial court refused the request and instructed the jury as follows:

"Under the law of our State the crime of false pretense is defined as follows:

'Every person who with intent to defraud, cheat or avoid payment shall designedly by oral false pretense as to an existing or past fact, or state of facts, obtain any money, personal property or other valuable thing from another person shall be deemed guilty of larceny.'"

We have consistently construed our false pretense statute, Ark. Stat. Ann. § 41-1901 (Repl. 1964), to hold that any misrepresentation or assurance in relation to a future transaction, may be a promise or covenant or warranty, but cannot amount to a statutory false pretense. See *McKenzie* v. *State*, 11 Ark. 594 (1851), *Kerby* v. *State*, 233 Ark. 8, 342 S.W. 2d 412 (1961), and *Ross* v. *State*, 244 Ark. 103, 424 S.W. 2d 168 (1968). Consequently, the instruction offered correctly stated the applicable law. With reference to the giving of instructions correctly stating the applicable law, in *Hill* v. *State*, 253 Ark. 512, 487 S.W. 2d 624 (1972), we said:

"We recognize that the trial court is not required to charge the law upon a question in every possible manner in which a correct statement of it may be prepared by counsel, but the law must be so declared that the jury may not be in doubt as to the law of a particular question as applied to the facts of the case. *DeShazo* v. *State*, 120 Ark. 494, 179 S.W. 1012. The instructions must fully and fairly declare the law applicable to any defense as to which the defendant has offered sufficient evidence to raise a question of fact. *Cox* v. *State*, 116 Ark. 588, 173 S.W. 187. See also, *Barnhardt* v. *State*, 169 Ark. 567, 275 S.W. 909. Even if the court's instructions could be said to have covered the matter in a general way, it is reversible error to refuse to give a specific instruction correctly and clearly applying the law to the facts of the case, unless it affirmatively appears that no prejudice resulted."

The State here proved not only the alleged misrepresented facts but also introduced evidence to show that appellant received the money upon a promise to do a future act. Since the alleged misrepresented facts were somewhat

disputed by appellant's witness Whitmire on cross-examination, we cannot say that no prejudice resulted because of the trial court's refusal to give the requested instruction. Therefore we must hold that the trial court erred in refusing to give the requested instruction.

POINT IV. We find no merit in this contention. The testimony of Mrs. Hamilton was admissible to show appellant's fraudulent scheme. See *Kerby* v. *State, supra.*

Reversed and remanded.

GEORGE ROSE SMITH, J., dissents and FOGLEMAN, J., CONCURS.

JOHN A. FOGLEMAN, Justice, concurring. I concur in the majority opinion. There was far more evidence introduced relating to Dean's failure to carry out promises to do acts in the future than there was bearing upon his misrepresentation of an existing fact. This evidence was admissible as bearing upon the fraudulent intent of Dean in obtaining money from Helms by misrepresenting fact, not intentions. Furthermore, it would be difficult, if not impossible, to separate the testimony to keep out any that bore upon Dean's allegedly false representations and upon his conduct at the time and thereafter, so that the jury would understand that a misrepresentation as to one's present intention to do something in the future was not the misrepresentation of an existing fact. Somewhere in the course of the proceeding, the defendant was entitled to have the effect of that testimony limited in a manner the jury could understand without having to interpret the meaning of the words "an existing fact or past fact, or state of facts". This interpretation has often been difficult even for lawyers and judges, who are supposed to have a great deal more education and insight in that respect than most jurors.

I think the dissent puts too much emphasis on a part of appellant's objection to the failure to give the instruction. He requested a correct instruction and stated that it was not covered by other instructions. In addition, he objected that failure to give the instruction would permit the state to argue

that "a present intention is a *material* fact". (Emphasis mine.) In his brief here, the appellant points out not only that the state might argue in closing that that was a misrepresentation as to future conduct and that, at the time of this misrepresentation, appellant had a present intention not to perform, but, aptly and pertinently, that the jury might so find. And it seems to me that it might well do so, without the matter being argued by the prosecuting attorney at all.

Consequently, as I view the matter, something more than an abstract statement and something more important than restriction of closing argument were involved.

GEORGE ROSE SMITH, Justice, dissenting. In *State* v. *Ross,* cited by the majority, we reversed the judgment because the trial judge had affirmatively instructed the jury that a culpable misrepresentation can relate to future conduct if accompanied by a present intention not to perform the promise. We had no choice except to reverse, because, as we pointed out, it is the settled rule that one's promise to do a future act which he does not actually mean to do is not a criminal false pretense.

In *Ross* the trial judge gave the jury bad law, which was error. Here the judge merely refused to give the jury what would have been good law if the proof called for the instruction. Thus the question is: Was the instruction required by the evidence?

It seems clear that it was not; so the instruction would have been abstract. Whether Dean made promises (a) in good faith or (b) with a fraudulent intent not to perform them was simply not an issue raised by the testimony. Dean himself was the only person who knew his subjective intent, but he declined to testify. The issues of fact related only to what Dean actually did, not to what he thought.

In fact, the appellant's only contention in the trial court and here is that in the absence of the requested instruction the prosecutor could argue to the jury that a misrepresentation with no intent to perform would be a false pretense. But that is not the law. It is something new for us to require trial

judges to instruct juries upon abstract principles of law so that the prosecutor will not argue a theory that is not the law. There are better preventives. If Dean's lawyer feared such an argument he could have requested the court to instruct the prosecutor not to make it. He could have objected and asked for an admonition if the prosecution made such an argument. At the very least he could have made a record of such an improper argument. But none of those steps were taken. There is not one syllable in the record to suggest that the prosecutor was allowed to make the improper argument which Dean wanted to prevent. Thus the trial judge is being reversed for his failure to give an instruction having as its sole purpose the prevention of an improper argument; yet we do not have any reason to think that such an argument was made. This is not a question of presuming prejudice from error. It is simply a question of whether the appellant has met his burden of showing that an error occurred. It seems plain to me that he has not.