Moses Edward WILEY *v.* STATE of Arkansas

CA CR 79-121                               594 S.W. 2d 57
Court of Appeals of Arkansas
Opinion delivered February 6, 1980
Released for publication February 27, 1980

*R. Wayne Lee,* for appellant.

*Steve Clark,* Atty. Gen., by: *Victra L. Fewell,* Asst. Atty. Gen., for appellee.

M. STEELE HAYS, Judge. Moses Edward Wiley was charged under Chapter 22 (THEFT) of the Arkansas Criminal Code (being Ark. Stat. Ann. § 41-2201 through § 41-2208). The felony information charged Wiley with violation of § 41-2203:

> The . . . defendant . . . on or about the 27th day of February, 1978, did . . . knowingly, with the purpose of depriving the owner of his property, take unauthorized control over property . . . of Whit Davis Lumber Company . . .

Wiley was tried by the court, found guilty and sentenced to five years in the penitentiary with two years suspended. For reversal, Wiley contends that a motion to dismiss the charges should have been granted and that he should have been credited with jail time totaling some 11 months. Our disposition of the appeal on the first point makes discussion of the second needless.

The State's case consisted of the testimony of Mr. Whit Davis: that Wiley contacted him at the lumber company on September 1 to buy lumber and building materials on credit. Wiley proposed to build a house on a lot left to him by his grandfather. Wiley filled out a credit application and was told by Mr. Davis that he would have to supply a legal description of the property. Mr. Wiley returned on September 7 and gave Mr. Davis a tax statement to a lot in Tolbert's Subdivision in the name of Alex Tolbert, Wiley's

grandfather, whom Wiley said had willed the property to him. Relying upon the credit application and the asserted ownership of the property, credit was extended and Wiley purchased substantial lumber and building materials on several occasions between September 7 and October 8. Davis did not receive payment on October 10, as promised, and in several telephone conversations with Wiley, Davis was told a check was on the way or would be forthcoming, which never arrived. Davis ultimately located the property and finding no construction nor any materials at the site, he concluded that he had been given false information and contacted the prosecuting attorney.

Appellee urges (1) that we should apply the rule of *Dixon* v. *State,* 260 Ark. 857 (1977), inasmuch as the single authority cited by appellant is not in point and (2) that appellant is raising an issue for the first time on appeal. We agree that *Manhattan Credit Company* v. *Brewer,* 232 Ark. 976, does not support appellant; however, we are unwilling to apply the principal of the *Dixon* case, if only as a matter of sufferance, because we feel it would not serve a useful end in this instance. As to the second point, it is true that appellant's motion to dismiss the charge is not expressly based on a lack of substantial evidence and for that reason appellee's argument gives us reason to pause, as the rule is clear that motions and objectins to the trial court must be not only timely, but *specific. Ayers* v. *United States,* 58 F. 2d 607 (8th Cir., 1932). Be that as it may, we are satisfied, from a careful study of the motion and ensuing comments between counsel and the trial court, that the motion was couched in words which, given reasonble interpretation, brought into question whether the evidence of the State sustained the charge as stated in the information. We find that it did not.

To understand our reasoning, it is necessary to examine a portion of the proceedings. At the close of the State's case, the following occurred:

> MR. LEE (counsel for defendant): Your Honor, we would move for dismissal of the charges on the ground this debt has already been dismissed. This forty-seven hundred dollar debt has already been dismissed by

Bankruptcy Court. (A) It's been dismissed by a Bankruptcy Judge as a bankruptcy debt. (B) It was sold over a period of time on an open account or on an account that wasn't one purchase. Mr. Davis secured the property description with which to check out the premises and find out if his lumber was going out there and to secure a lien on this property ahead of time.

Mr. Wiley ran into financial difficulties after he had sold him the materials and filed bankruptcy and listed him as a creditor and he didn't bother to respond to it. And the Federal Judge has already ordered those debts discharged.

THE COURT: We're not suing on a debt here.

MR. LEE: I understand that, your Honor. That's exactly my point. He had every opportunity to go into Federal Court and get his lumber back. As matter of fact, I believe the Federal Bankruptcy Judge specifically ordered that the lumber be picked up if he wanted to. Mr. Wiley was in jail all this time.

MR. HAYNES: Your Honor, I'm sure the Court is aware that whether or not a bankruptcy was filed has nothing to do with this. If this was solely a debt, Mr. Davis wouldn't have any action in this Court anyway. His action would be through suit in Circuit Court. And, whether or not he was discharged in bankruptcy matters not. There was a fraud perpetrated and this is our position. And he's on trial for the fraud and not for owing Mr. Davis some money.

MR. LEE: Your Honor, my contention is, though if it was not a legitimate debt and it was a fraud, by Mr. Davis not filing an answer to the bankruptcy petition, he has admitted that it was a legitimate debt and that legitimate debt's been discharged by a Federal Judge. I think any further action on that would be in contempt of the Federal Bankruptcy Court, your Honor.

MR. HAYNES: Your Honor, I'm sure the Court's

aware that failing to file an answer in a bankruptcy don't admit anything.

THE COURT: I don't think anybody's contending that the Federal Bankruptcy Court can abate and absolve criminal prosecution.

MR. LEE: No, sir. I concur with that a hundred percent. But, what I'm saying is if he didn't file an answer to a federal bankruptcy petition on this same lumber in which he was listed as a creditor, you know, now it's going to be a criminal matter because we didn't collect it in Federal Bankruptcy Court.

THE COURT: He could have done both. I'll overrule your motion, Mr. Lee.

Clearly, there appears to have been some confusion as to whether the defendant was being tried for theft by deception (formerly termed "false pretense") as defined in § 41-2203(1)(a) or theft by taking unauthorized control over the property of another as defined in § 41-2203 (1)(b). This confusion may have resulted in a similar misconception by the trial court, as after finding the defendant guilty he described the defendant's conduct as a case of "gross misrepresentation of facts." It is clear that fraud, deception and misrepresentation are not elements of the offense defined in 1(a), under which the defendant was charged. Obviously, these are elements of Section 1(b).

Whether it was a fatal defect to charge the defendant under 1(a) and try him under 1(b) we do not decide, as the point is not raised by the parties and need not be decided here. It is discussed only for the purpose of giving clarity to the ruling that appellant's motion to dismiss should have been granted, notwithstanding the lack of clarity in the language used, for the reason that where the State has contributed to the confusion by charging one offense and trying another, the defendant should be given the benefit of some latitude in framing his motion, and, too, the motion brought adequately if not squarely before the court the issue of whether the defendant was not entitled to an acquittal under

the evidence presented, as we think he was. Furthermore, the defendant was entitled to an acquittal under either 1(a) or 1(b), as essential elements of either offense were lacking.

With respect to the offense of theft by deception, there was no showing that any representation by the defendant to Mr. Davis of a past or present facts, was false or deceptive. It was not shown that Allex Tolbert did not own the property, or that he had not willed it to the defendant, or that defendant's financial statement was knowingly false, or that any fact represented by Wiley was false. Presumably, the State regarded the deception as being founded upon the fact that the defendant represented an intention to use the materials to build a house and failed to do so. The statute itself makes clear that in the absence of other circumstances, the mere failure to perform a promised act shall not create an inference of deception (See Ark. Stat. Ann. § 41-2201(3)(e)). Nor does the fact that the defendant took the materials to his home rather than to the job site provide the missing element. That is not an incriminating circumstance nor an act of culpability. The prosecution asked the defendant if he had not sold the materials (which he stoutly denied) and had such evidence been offered there would be little difficulty in affirming, but questions are not evidence and there was no evidence from either the prosecution or the defense to show what became of the materials. Mr. Davis's testimony in rebuttal challenged the size of the defendant's shed, where the materials were said to have been stored, but Mr. Davis was vague and unable to even estimate the dimensions of the shed (though he insisted it was too small to house all the materials) and that disputed issue was not persuasive of the defendant's guilt beyond a reasonable doubt.

Turning to the charge of knowingly taking unauthorized control over the property of another person, it is immediately apparent that the defendant was not properly chargeable with this offense under the facts presented. This section deals with property belonging to another person, the *owner*. This section is meant to apply to simple theft (or larceny) on the one hand or various offenses in the nature of theft by a bailee, embezzlement or wilful conversion, on the other (see the commentary to § 41-2203), none of which were proven. In fact,

"property of another person" is defined elsewhere in the chapter (Ark. Stat. Ann. § 41-2201[7]) as being:

> . . . any property in which any person or government other than the actor has a possessory or proprietary interest, but does not include property in the possession of the actor in which another has only a security interest, even though legal title is in the secured party pursuant to a conditional sales contract or other security agreement.

Mr. Davis's testimony repeatedly refers to the materials as having been "sold" to the defendant, as indeed they were, and the defendant became the owner of those goods at the moment of purchase, subject of course to the rights of a materialman under the statutes dealing with materialmen's liens. That is not to say that a purchaser of building materials cannot be subject to prosecution under § 41-2203, but where, as here, the evidence is silent as to what became of the materials, then all that remains is a broken promise which will not support conviction. *Conner* v. *State,* 137 Ark. 123; *Davis* v. *State,* 241 Ark. 646; *Kirby* v. *State,* 233 Ark. 8.

Finally, the appellee contends that appellant's motion (being in the nature of a motion for a directed verdict) was not renewed at the close of the defendant's case and, therefore, waived. True, the motion was not renewed. But, numerous decisions hold that the effect of a failure to renew a motion for directed verdict at the close of the defense results in the sufficiency of the evidence being judged on the entire record. *Brewer* v. *State,* 257 Ark. 51; *Crow* v. *State,* 248 Ark. 1051; *Smith* v. *State,* 241 Ark. 748. Certainly, there was nothing in the record from the defendant's testimony that supplied substantial evidence of guilt. The defendant testified that he intended to build the house on the property, but was unable to do so because of intervening personal and financial difficulties; that the materials were stored in his shed when he was arrested in February of 1978 and while he was confined in jail for 11 months they were removed. The State failed to establish a violation of Section 41-2203.

Reversed and dismissed.