## Louis O'RIORDAN *v.* STATE of Arkansas

CR 84-8 665 S.W.2d 255

Supreme Court of Arkansas
Opinion delivered February 21, 1984
[Rehearing denied March 26, 1984.*]

*Sherry J. Alexander,* for appellant.

*Steve Clark,* Atty. Gen., by: *Alice Ann Burns,* Dep. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. The appellant was charged with theft, a class C felony, in that by deception he obtained from Bill W. Willis a trailer worth over $100, with the purpose of depriving Willis of his property. The jury found the defendant guilty of the lesser included misdemeanor of theft of property and imposed a sentence of one year in jail. Ark. Stat. Ann. §§ 41-2203 and 41-901 (1977).] The Court of Appeals, citing Rule 29 (1) (c), transferred the case to this court.

*PURTLE, J., would grant rehearing.

Chief among O'Riordan's four arguments for reversal is his contention that the State failed to prove that O'Riordan had a present intent to deprive Willis of his trailer when O'Riordan obtained possession of the trailer. That question of subjective intent is often not susceptible of direct proof, but in this case there is substantial circumstantial evidence to support the jury's verdict.

When the evidence is viewed most favorably to the verdict, as our rule requires, we conclude that the jury could have found the events to have occurred in this manner:

O'Riordan had a flashing-sign business in Turon, Kansas. In January, 1980, he had an order to pick up 28 signs in Houston, Texas, and deliver them in Missouri. When he received that order he was returning from Illinois with a truck and a 6-foot trailer, too small to carry the 28 signs. On January 11 O'Riordan stopped in Springfield, Missouri, at Guy Peck's combined service station and trailer rental business. O'Riordan signed a rental contract by which he obtained a 14-foot flatbed trailer from Peck, the rent to be $50 and the trailer to be returned on January 18. Peck testified that the rent was never paid and he did not even hear from O'Riordan until Mrs. O'Riordan telephoned Peck four or five mnths later. Peck did not get his trailer back and still did not know where it was when the case was tried more than three years later.

On January 14, three days after O'Riordan had rented Peck's trailer for a week, O'Riordan stopped at Willis's welding shop in Wickes, Arkansas. O'Riordan falsely told Willis that O'Riordan (or his brother-in-law) owned the 14-foot trailer. O'Riordan promised to pay Willis $900 for the 16-foot trailer that he is charged with having stolen and to return with the money in three days. He left the 14-foot trailer as security with Willis, from whom it was later recovered by a police officer. Willis testified that two or three days later O'Riordan called to say that he was having trouble with his truck and would be a couple of days late. After that Willis did not hear from O'Riordan again, though Willis tried for several months to reach him by phone. At the time of the trial, three years later, Willis had never seen his trailer

again and did not know where it was.

O'Riordan testified at length, detailing the alleged mechanical problems, adverse weather conditions, and financial difficulties that had prevented him from returning Willis's trailer or paying for it. He said that he had the trailer in Joplin before Christmas, 1980, but it was stolen while he was at home in Turon. Thus according to O'Riordan's own testimony, he had the trailer for almost a year without making any payment on it or returning it to Willis. The issue was simply one of fact, with the jury accepting the testimony of the State's witnesses. That finding, based upon substantial evidence, concludes our inquiry.

The appellant's other three arguments are plainly without merit. First, the asserted defects in the warrant for O'Riordan's arrest are immaterial. An invalid arrest may call for the suppression of a confession or other evidence, but it does not entitle the defendant to be discharged from responsibility for the offense. *Singleton* v. *State*, 256 Ark. 756, 510 S.W.2d 283 (1974). Second, there was no denial of a speedy trial, for O'Riordan resisted extradition in Kansas and was tried with sufficient promptness after he was returned to Arkansas. A.R.Cr.P. Rule 28.3 (e). Third, the State's asserted failure to prove the value of the trailer is immaterial. O'Riordan himself indicated by his testimony that it was worth $700; further, no minimum value is required for the jury's finding of theft as a misdemeanor. Ark. Stat. Ann. § 41-2203; AMCI 2203-P.

Affirmed.

PURTLE and HOLLINGSWORTH, JJ., dissent.

JOHN I. PURTLE, Justice, dissenting. I dissent because I think the complaining witness, Bill W. Willis, used the criminal laws of this state, by and with the aid and consent of local townspeople, to try to collect a civil debt. According to the record Mr. Willis sold the appellant a 16 foot shop-made trailer for $900 on credit. In fact appellant executed a promissory note which was due on the 17th day of January, 1980. The seller also gave a bill of sale to the appellant. After

the shop-made trailer was loaded for the first time, in Houston, Texas, it developed problems which necessitated repair. Appellant called Willis on January 17, 1980, and tried to get Willis to deduct the cost of repairs from the price of the trailer. Appellant called Willis again on January 19, 1980, from his home and advised him of the difficulties he was having with the trailer. I think the facts clearly reveal that appellant had financial problems and was unable to pay the promissory note when it was due. Within a few days after the note was due Willis caused criminal charges to be filed against the appellant.

I suppose the reason no cases are cited in the majority opinion is that this may be the first time the state of Arkansas has imprisoned a person for debt. I certainly hope the practice will not extend to other credit purchases such as automobiles. On two occasions the Arkansas Court of Appeals has construed Ark. Stat. Ann. § 41-2203 (1) (Repl. 1977). *Wiley* v. *State*, 268 Ark. 552, 594 S.W.2d 57 (1980) and *Cates* v. *State*, 267 Ark. 726, 589 S.W.2d 598 (1979). In *Wiley* the accused had purchased building material from the prosecuting witness. Wiley promised to pay for the materials on a certain date but he failed to pay. The prosecuting witness went to the site where the materials were to be used and found a vacant lot. The Court of Appeals reversed and dismissed the conviction of theft by receiving. In *Cates* the defendant received money to pay off liens but instead converted the money to his own use. The Court of Appeals also reversed and dismissed that conviction.

Our own court has held that "A false representation as an inducement to pay money that something thereafter was to be or was not to be done is not a false pretense." *Bakri* v. *State*, 261 Ark. 765, 551 S.W.2d 215 (1977). We also reversed and dismissed a conviction for false pretense in the case of *Ross* v. *State*, 244 Ark. 103, 424 S.W.2d 168 (1968). The defendant had borrowed money from a bank to purchase cattle. The bank was supposed to have a lien on the cattle. Ross never purchased the cattle but instead converted the money to his own use. *Ross* was cited with approval in *Dean* v. *State*, 258 Ark. 32, 522 S.W.2d 421 (1975) wherein Dean was convicted for falsely pretending that he would buy cattle

with $2,500 he borrowed from the complaining witness. In *Dean* we held that any misrepresentation or assurance in relation to a future transaction may be a promise or covenant or warranty, but cannot amount to a statatory false pretense.

This court has many times held that a person may not be placed in jail for willful failure to pay a debt or judgment. *Leonard* v. *State,* 170 Ark. 41, 278 S.W. 654 (1926).

I am of the opinion that Mr. Willis sold his trailer on credit to a bad risk. Therefore, the state should not come to his aid by lending its overworked criminal justice system to collect a debt.

HOLLINGSWORTH, J., joins in this dissent.