The Honorable Mary Anne Salmon State Senator 29 Heritage Park Circle North Little Rock, Arkansas 72116
Dear Senator Salmon:
I am writing in response to your request for an opinion regarding the issuance of concealed-carry handgun licenses by the Arkansas State Police ("ASP") to individuals with "expunged" felony convictions. You have set out several excerpts from the questions and answers discussed in Opinion 2001-260 and ask whether "the responses to the questions posed in Op. Att'y. Gen. 2001-260
[are] still correct." You also inquire "[i]f yes, would the State Police have authority to deny issuance of a concealed handgun license to a person based solely on the existence of a felony conviction that was expunged prior to March 13, 1995?" The date you mention is the effective date of Act 595 of 1995, an act concerning the possession of firearms by persons with expunged felonies.
RESPONSE
In response to your first question, there has been no salient change in the law on this topic since the issuance of Op. Att'y. Gen. 2001-260. I agree with the general conclusions made by my predecessor in Opinion 2001-260. In response to your second question, concerning whether the State Police has authority to deny the issuance of a concealed handgun license to a person with a felony conviction that was expunged prior to March 13, 1995, I cannot, in the context of an official Attorney General opinion, make any factual conclusions about the actions of the State Police in granting or denying licensure in a particular case. That determination would involve an analysis of the facts concerning a particular applicant. I am not empowered as a fact-finder in the context of issuing official Attorney General opinions. I have set out some discussion of the legal principles limiting the State Police's authority in this regard. To the extent the State Police seeks to disregard a court-ordered expungement, however, it does so "at its peril."
Question 1 — Are the responses in Op. Att'y. Gen. 2001-260 stillcorrect?
In my opinion the answer is generally "yes." A quick review of the conclusions reached in Opinion 2001-260 is necessary before proceeding further. As an initial matter, the Opinion states as follows:
 The Director of the State Police is charged with the duty of administering the concealed handgun licensing law, codified at A.C.A. §§ 5-73-301 to -315 (Repl. 1997 and Supp. 2001). The law states that the Director" shall" issue a license if an applicant meets various requirements, among them that the applicant "[i]s not ineligible to possess a firearm by virtue of having been convicted of a felony in a court of this state, of any other state, or of the United States without having been pardoned for same and had firearms possession rights restored. . . ." A.C.A. § 5-73-309(1)(D)(i) (Supp. 2001). The law further requires that the applicant not be "subject to any federal, state or local law which makes it unlawful to receive, possess or transport any firearm. . . ." A.C.A. § 5-73-309(1)(D)(ii).[1] The first part of this statute, however, does not itself define who is "ineligible," or what constitutes a "conviction." It refers only to a pardon or restoration of firearms rights as the avenues to render such persons "eligible." The use of the word "conviction" prior to these two exceptions, however, is important, as some types of felony adjudications may not in the first place be deemed "convictions" under state law. The second part of the subdivision refers to any other federal, state or local law that might make it unlawful for the applicant to possess a firearm. It is therefore necessary to look to law other than A.C.A. § 5-73-309 to determine the eligibility of an individual applicant to obtain a concealed license. My predecessor concluded that the relevant provision of state law in this regard is the so-called "felon-in-possession" statute, A.C.A. § 5-73-103[footnote omitted]. See Op. Att'y Gen. 1996-247.
Id. at 2.
The Arkansas State Police is thus charged with the duty of determining which individuals are "ineligible" to "possess" firearms and must withhold the issuance of a concealed-carry license to persons who are ineligible. The State Police, on the other hand, is bound to issue concealed-carry licenses to persons who are not ineligible, assuming all other requirements have been met. Although the language of the statute refers to a pardon and restoration of firearms rights as being necessary to restore eligibility after a felony "conviction," some criminal adjudications are never considered convictions at all, and as a consequence, do not amount to "convict[ions]" under A.C.A. §5-73-309(a)(D)(i) that might necessitate pardoning or restoration of rights in order to restore eligibility to possess a firearm.[2] Adjudications under Act 346 of 1975 (commonly called the "First Offender Act"), fall into this category. That law authorizes a judge, after the entry of a guilty plea or plea of nolo contendere and without an adjudication of guilt, to defer further proceedings and place the defendant on probation. A.C.A. § 16-93-303(a)(1)(A) (Supp. 2005). Upon successful completion of the probation or upon earlier release by the court, the defendant "shall be discharged without court adjudication of guilt, whereupon the court shall enter an appropriate order which shall effectively dismiss the case, discharge the defendant, and expunge the record, if consistent with the procedures established in § 16-90-901 et seq."[3] A.C.A. § 16-93-303(b).
The questions addressed in Opinion 2001-260 revolved around the effect of an "expungement" of a previous criminal disposition under Act 346 of 1975 on an applicant's eligibility to possess a firearm and thus to obtain a concealed-carry license. The questions specifically asked about the impact of Act 595 of 1995. That act, which is still uncodified,[4] amends A.C.A. §5-73-103 (the "felon-in-possession" statute), and provides that persons with prior criminal adjudications that have been expunged are nonetheless convicted for purposes of possessing firearms. Persons with such convictions can therefore still be prosecuted under A.C.A. § 5-73-103 for possession of firearms. Act 595 became effective on March 13, 1995, the date you reference in your request for an opinion.
As discussed in Opinion 2001-260, the Arkansas Supreme Court has decided at least two cases involving the rights of persons with expunged felony dispositions to possess firearms under the "felon-in-possession" statute (A.C.A. § 5-73-103), in light of Act 595 of 1995. See State v. Warren, 345 Ark. 508,49 S.W.3d 103 (2001); and State v. Ross, 344 Ark. 364, 39 S.W.3d 789
(2001). These cases are thus relevant in determining whether such persons may "possess" firearms for purposes of being eligible to receive a concealed-carry handgun license from the State Police. I will not restate the entire analysis made by my predecessor in Op. Att'y. Gen. 2001-260 concerning these cases. It is sufficient to say that in each case the court held that Act 595 of 1995 was not "retroactive" and dismissed subsequent felon-in-possession charges brought against defendants where the previous felony record had been expunged. The court held in each case that Act 595 did not apply and the expungements of the earlier records precluded a finding that the defendants were convicted "felons." As a consequence, the defendant in each case was not criminally prohibited from possessing a firearm by virtue of his expunged record. The court in Ross, supra, clearly suggests that the applicable date for determining whether Act 595 applies to prevent a defendant from possessing a firearm is the date of sentencing on the previous charge. Thus, as a general matter, defendants sentenced prior to the effective date of Act 595 (March 13, 1995) who later receive an expungement, are not criminally prohibited from possessing firearms under the felon-in-possession statute. On the other hand, defendants sentenced under such acts after March 13, 1995, who later receive expungements, are still prohibited from possessing firearms under Act 595 of 1995. These persons will need a pardon, restoration of rights or other authorization under A.C.A. § 5-73-103 in order to be eligible to possess a firearm. This was the general conclusion of Op. Att'y. Gen. 2001-260 with which I concur.[5] In my opinion, therefore, the answer to your first question is generally "yes."
Question 2 — If yes, would the State Police have authority todeny issuance of a concealed handgun license to a person basedsolely on the existence of a felony conviction that was expungedprior to March 13, 1995?
I cannot, in the context of an official Attorney General opinion, make any factual conclusions about the actions of the State Police in granting or denying licensure in a particular case. That determination would involve an analysis of the facts concerning a particular applicant. I am not empowered as a fact-finder in the context of issuing official Attorney General opinions. I can, however, set out some relevant law addressing the limits of the State Police's authority in this regard.
As I noted earlier, the Arkansas State Police must deny the issuance of a concealed-carry license to persons who are ineligible to possess firearms. The State Police, on the other hand, must issue concealed-carry licenses to persons who are eligible, assuming all other requirements have been met. Your second question therefore inquires as to whether the Arkansas State Police has authority to deny licensure to an individual who received an expungement prior to March 13, 1995. I assume, because the expungement occurred prior to this date, that the sentencing for the underlying charge also occurred prior to March 13, 1995. (See Ross, supra and n. 5, supra). Act 595 of 1995 (discussed above), could therefore not be used as a basis to deny licensure to the individual you describe.
You have not stated, however, under what act the defendant was sentenced or any other facts about the adjudication. It is my understanding in this regard that the Arkansas State Police is often faced with difficult factual considerations in reviewing expunged felony records. See e.g., Op. Att'y. Gen. 2002-275
(regarding State Police background checks for employment purposes, and describing judicial expungement orders that: 1) do not recite the basis for the court's legal authority to expunge the record; 2) expunge a record where the defendant was not a "first offender" and 3) expunge more than one conviction for the same individual in the same court order). See also, Comment, CanYou Make this Go Away?: Alabama's Inconsistent Approach toExpunging Criminal Records, 35 Cumb. L. Rev. 385, 387 (2005) (stating that "[c]ourts in Alabama . . . are often asked to expunge criminal records despite the fact that no statutory authority expressly grants them the power to do so" and that "Alabama judges have granted expungements on equitable grounds despite the absence of clear statutory authority").
To the extent a defendant was not originally sentenced under an act authorizing a later expungement, or in the case of other irregularities surrounding an expungement order, the following footnote in my predecessor's opinion (Op. Att'y. Gen. 2001-260
about which you have inquired), should be discussed:
 In some cases, a purported expungement entered without proper compliance with statutory procedures will not suffice to obviate a conviction. See e.g. Baxter v. State, 324 Ark. 440, 922 S.W.2d 682
(1996). Where, for example, the circuit court records reflect an adjudication of guilt (i.e. that the defendant was "found guilty,") or that sentence was actually imposed in the way of a fine or imprisonment, a "conviction" will still exist and such an applicant should be deemed ineligible to possess a firearm. Cf. also, Op. Att'y. Gen. 2001-056.
Id. at n. 4.
To the extent this language can be read to suggest that the Arkansas State Police should ignore or disregard non-complying court-ordered expungements in denying a concealed carry license, some cautionary language is warranted.
As my predecessor also concluded in another Opinion (Opinion2002-275, regarding background checks for certain employment purposes), the Arkansas State Police must honor a formally complete uniform order to seal the records even if it knows that the basis recited for issuing the order is wrong." Id. at 2. But "upon receiving . . . a deficient order [that is not complete and therefore does not meet the requirements of the uniform expungement law], the ASP should inform the issuing court of the deficiency, thereby possibly affording it an opportunity to cure the problem." Id. at 8.
These two conclusions, the language in footnote 4 of Op. Att'y. Gen. 2001-260 on the one hand (which might be read to suggest that a non-complying expungement order will not ensure eligibility to receive a concealed-carry license), and the language above from Op. Att'y. Gen. 2002-275 on the other (suggesting that the Arkansas State Police must honor non-complying expungement orders that are complete on their face), seem at odds. The first might be read to suggest that the ASP may look behind an irregular expungement order to deny a concealed-carry license and the latter states that the ASP must honor such orders when performing employment background checks, unless the orders do not comply with the statutorily authorized format, in which case the ASP should notify the court of the error. A third opinion issued by my predecessor prior to the issuance of either Op. Att'y. Gen. 2001-260 or 2002-275 may assist in explaining the discrepancy.
In Opinion 2001-056, my predecessor was asked by the Chairman of the Board of Law Examiners whether a particular adjudication was a felony for purposes of applying for readmission to the bar. The underlying facts showed a drug offense adjudication under ACA5-64-407 (a "first offender" drug statute), but that the defendant was "found guilty" and fined in conjunction with his ten-year probation and later expungement. This was contrary to the applicable sentencing statutes. My predecessor stated that "merely opining that the court erred does not establish that its action in expunging the conviction is a nullity." Id. at 2. My predecessor stated further:
 A circuit court clearly has jurisdiction to apply or to misapply the statutes at issue in a matter properly before it, subject to challenge on appeal. In the present case, I assume the defendant complied with the statutory requirement of notice to the prosecution when he applied for expungement. A.C.A. § 16-90-904(b)(1) (Supp. 1999). I further assume that the prosecution failed to appeal the expungement, which might suggest that the court's action is now beyond review.
 However, these assumptions cannot overcome the fact that the court's imposition of the fine was itself a "judgment of conviction" that divested the trial court of jurisdiction over that aspect of the case, subject only to the qualification that the defendant had 30 days to file a post-judgment motion. See
Ark.R.Crim.P. 33.3. Indeed, in Harmon v. State, 317 Ark. 47, 51-52, 876 S.W.2d 240 (1994), the Supreme Court went so far as to rule that once the sentence of a fine is put into effect, the trial court "loses jurisdiction to modify or amend the original sentence. . . ."
Id. at 2.[6]
My predecessor thus concluded that "a trial court lacks jurisdiction to alter, amend or expunge a judgment of conviction imposing a fine once the time for filing post-judgment motions has run." Id. at 7. My predecessor therefore concluded that for purposes of readmission to the bar, "the Board may consider the application [for readmission] . . . only if it is invested with sufficient discretion to ignore the application of Section 7.L [the Rule denying readmission in the case of most felonies]."Id. at 2.
The distinction made by my predecessor based upon a lack of jurisdiction on the part of the expunging court is an important one and requires further discussion. In most cases, court orders entered without subject-matter jurisdiction are considered "void."
This point is illustrated by the decision in Pike v. State,344 Ark. 478, 40 S.W.3d 795 (2001). In Pike, a defendant sentenced under Act 346 continually violated his probation. At the first revocation hearing requested by the State, the court held the defendant in contempt for his violations, but did not revoke his Act 346 status or accept his earlier-tendered guilty plea. At the second probation-revocation hearing, the court did revoke the defendant's Act 346 status, accepted his guilty plea, and ordered him to pay a fine, fees and court costs and held him in contempt. The court also ordered him to serve time in a regional punishment facility and extended his probation by 24 months. The State subsequently filed a third petition for revocation, citing additional non-compliance, and the court held the defendant in contempt and sentenced him to jail. The defendant argued that the trial court had no jurisdiction to hold him in contempt. On appeal, the Arkansas Supreme Court stated:
 In determining whether one may be held in contempt for violating a court order, a distinction must be made between erroneous and void orders. In Etoch v. State, 332 Ark. 83, 964 S.W.2d 798 (1998), we stated that the fact that a decree was erroneous would not excuse disobedience on the part of those bound by its terms until the order was reversed. Id. (citing Meeks v. State, 80 Ark. 579, 98 S.W. 378 (1906)). We further stated that where the contemnor merely refused to comply with an order that was clearly within the court's jurisdiction and power, we will not look behind that order. Id. (citing Carle v. Burnett, 311 Ark. 477, 845 S.W.2d 7 (1993)); see also Ark. Code Ann. § 16-10-108(a)(3) (4) (Repl. 1999).[Footnote omitted.]
 Our own holdings on this issue are harmonious with the general rule, stated in 17 Am.Jur.2d Contempt § 147 (2000), as follows:
 "Where the court has jurisdiction over the subject matter and the parties and has the authority to render a particular order or decree, the fact that such order or decree is erroneous or irregular or improvidently rendered does not justify a person in failing to abide by its terms; failure to obey the order may be punished as contempt despite the error or irregularity."
 Conversely, if the trial court lacks subject-matter jurisdiction, an attempt to make a further order in the case is void for lack of jurisdiction, and the issue of subject-matter jurisdiction can be raised at any time. For example, in Leonard v. State, 170 Ark. 41, 278 S.W. 654 (1926), we quoted approvingly from Martin v. State, 162 Ark. 282, 257 S.W. 752
(1924), where we stated, "This court is committed to the doctrine that one cannot be held in contempt for disregarding a void order or judgment." We further stated, "It is a good defense to an application to punish for a contempt that the order or direction charged to have been disobeyed or violated was made without authority or jurisdiction." Leonard, supra
(citation omitted).
Id. at 483.
The court in Pike went on to address the effect of the proceedings at issue in Pike:
 We have made it clear that a trial court loses jurisdiction to modify or amend an original sentence once a valid sentence is put into execution. E.g., McGhee v. State, 334 Ark. 543, 975 S.W.2d 834
(1998); Harmon v. State, 317 Ark. 47, 876 S.W.2d 240 (1994); DeHart v. State, 312 Ark. 323, 849 S.W.2d 497 (1993); Jones v. State, 297 Ark. 485, 763 S.W.2d 81 (1989).[7] We have also held that a plea of guilty, coupled with a fine and either probation or a suspended imposition of sentence, constitutes a conviction, thereby depriving the trial court of jurisdiction to amend or modify a sentence that has been executed. McGhee, supra; Harmon, supra; Jones, supra.
This distinction is consistent with my predecessors' conclusion in Op. Att'y Gen. 2002-056 (regarding admission to the bar), that a trial court loses jurisdiction to issue an expungement order if a fine was imposed, and that the Bar Committee was permitted to look behind the expungement order in such instance to determine the applicant's qualification.
Similarly, the Arkansas Supreme Court has held that where a defendant was sentenced by the trial court under Act 346 of 1975, but was not eligible to be sentenced under Act 346 (because the offense was a sex offense, see A.C.A. § 16-93-303(a)(1)(B)), the sentencing under Act 346 was "void or illegal" and the court therefore "modif[ied] [the] sentence to reflect that his probation is not pursuant to Act 346 and that he is not entitled to the expungement provisions therein." Thomas v. State,349 Ark. 447, 459, 79 S.W.3d 347 (2002). The court considered the matter one of "subject matter jurisdiction" and raised the issue itself for the first time on appeal. See also, Shelton v.State, 44 Ark. App. 156, 870 S.W.2d 398 (1994). ("[i]t is true that "[a] trial court does not have the power to expunge [a defendant's] record when [defendant] was not sentenced under one of the statutes which specifically provides for expunging the record"). Cf. also, Powers v. Bryant, 309 Ark. 568, 571,832 S.W.2d 232 (1992) (where plaintiff alleged that a coram nobis
order nullifying and expunging a decades-earlier criminal conviction was "void" and "ultra vires," but did not allegefraud or lack of jurisdiction on the part of the trial court, the order bore presumptive verity and could not be questioned by collateral attack).
The consistent line of analysis in the cases and opinions above is that the question of whether an expungement order is void or merely erroneous depends upon whether it was entered without jurisdiction. If an expungement order was entered without subject-matter jurisdiction it is void and may be collaterally attacked in a judicial proceeding. If the order was entered with subject-matter jurisdiction, but is erroneous for some other reason, it is not void and is not subject to collateral attack. The question of whether a particular expungement order was entered without subject-matter jurisdiction will be one of fact in each instance.
The fact that a particular expungement order may be void, however, does not automatically grant the Arkansas State Police discretion to ignore or disobey such order when it is determining who is eligible to receive a concealed-carry-handgun license. It has been stated that:
 Interests of orderly government demand that respect and compliance be given to orders issued by courts possessed of jurisdiction of persons and subject matter; one who defies public authority and willfully refuses his obedience does so at his peril.
Rocque v. Design Land Developers of Milford, Inc.,82 Conn. App. 361, 366, 844 A.2d. 882 (2004), citing United States v.United Mine Workers, 330 U.S. 258, 303, 67 S.Ct. 677,91 L.Ed. 884 (1947). See also, Epps, Sheriff v. Commonwealth ofVirginia, 46 Va. App. 161, 616 S.E.2d 67 (2005) ("[o]f course a party cannot be guilty of contempt of court for disobeying an order which the court had no authority of law to make, but if a court has jurisdiction of the parties and legal authority to render the order, then it must be obeyed even though it was erroneous or improvidently entered. . . . When one subject to a court order disobeys that order contending the order is void, he does so at his peril . . ."); and Mellor v. Cook, 597 P.2d 882
(Utah 1979) ("[t]here should be no cavalier attitude in disregarding an order of court which is fair on its face and one who willfully and knowingly presumes to do so acts at his peril").
As also stated in In Re. Berry, 68 Cal. 2d 137,65 Cal. Rptr. 273, 436 P.2d 273 (1968):
 In this state a person affected by an injunctive order has available to him two alternative methods by which he may challenge the validity of such order on the ground that it was issued without or in excess of jurisdiction. He may consider it a more prudent course to comply with the order while seeking a judicial declaration as to its jurisdictional validity. [Citation omitted.] On the other hand, he may conclude that the exigencies of the situation or the magnitude of the rights involved render immediate action worth the cost of peril. In the latter event, such a person, under California law, may disobey the order and raise his jurisdictional contentions when he is sought to be punished for such disobedience. If he has correctly assessed his legal position, and is therefore finally determined that the order was issued without or in excess of jurisdiction, his violation of such void order constitutes no punishable wrong. [Citation omitted.]
Id. at 148-149.
In response to your second question, therefore (whether the Arkansas State Police has authority to deny the issuance of a concealed-carry-handgun license based solely upon a felony record expunged prior to March 13, 1995), this question may depend upon the facts surrounding the particular record. I am not empowered as a fact-finder in the issuance of official Attorney General opinions. To the extent that the Arkansas State Police, in the course of such denial, seeks to disregard a court-ordered expungement, it does so "at its peril." An option may exist to test the validity of such orders by resort to a collateral judicial proceeding as discussed above.[8] The Arkansas State Police should confer with its assigned counsel concerning these matters.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
[1] Although the applicable statute, A.C.A. § 5-73-309, was amended since the issuance of Opinion 2001-260 (see Act 545 of 2003), the portions of the statute quoted above were not amended.
[2] Federal law on what constitutes a conviction defers to the law of the jurisdiction in which the criminal proceedings were held. See 18 U.S.C. § 921(a)(20)(B) ("[w]hat constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms").
[3] Sections 16-90-901 to -906 of the Arkansas Code establish uniform procedures for expungements. The effect of having a record expunged in accordance with this subchapter is that the defendant "shall have all privileges and rights restored, shall be completely exonerated, and the record which has been expunged shall not affect any of his civil rights or liberties, unless otherwise specifically provided for by law." A.C.A. §16-90-902(a) (Supp. 2005). Subsection (b) of the same statute states that: "Upon the entry of the uniform order to seal records on an individual, the individual's underlying conduct shall be deemed as a matter of law never to have occurred, and the individual may state that no such conduct ever occurred and that no such records exist."
[4] As noted in Op. Att'y. Gen. 2001-260, reference may be had to Op. Att'y. Gen. 96-247 for a discussion of the reasons for this action.
[5] Although there may be some uncertainty as to whether the applicable date should be the date of sentencing on the prior charge or the date the crime leading to that charge was committed (see, e.g., Op. Att'y. Gen. 2002-173), the Ross case suggests that the former is the applicable date.
[6] It should be noted that the relevant law was later amended to allow certain modifications after entry of a judgment of conviction. See Act 1569 of 1999, codified at A.C.A. §§5-4-301, -303, -304 and -306 (Supp. 2005). It does not appear that this Act, however, would validate a later expungement of the record where the entry of a judgment of conviction, finding of guilt, or entry of a guilty plea or nolo contendere plea still stands.
[7] Again, this law has been superseded by statute for limited purposes. See n. 6, supra, and Act 1959 of 1999. It does not appear that it would authorize a retention of jurisdiction to later expunge a record where the imposition of sentence or adjudication of guilt remains unmodified.
[8] Resort to judicial process may well be what my predecessor had in mind in penning footnote 4 to Opinion 2001-260, rather than suggesting administrative disobedience of court-ordered expungements.