Richard Orville GOODEN *v.* STATE of Arkansas

CR 87-224                                                        749 S.W.2d 657

Supreme Court of Arkansas
Opinion delivered May 9, 1988

*Kenneth George Fuchs* and *Fredye L. Eckhart*, for appellant.

*Steve Clark*, Att'y Gen., by: *Lee Taylor Franke*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The appellant, Richard Orville Gooden, was convicted of conspiracy to manufacture marijuana, manufacture of marijuana, and possession of marijuana with intent to deliver. On appeal Gooden argues: (1) he was denied a speedy trial; (2) the trial court should have suppressed evidence obtained pursuant to an unlawful search; (3) the court should have enforced the terms of a plea agreement not adhered to by the State or, in the alternative, should have suppressed a statement made in connection with the plea agreement; and (4) as a matter of law Gooden could only be convicted of the manufacturing charge.

This case was certified to us by the court of appeals pursuant to Rules 29(1)(a) and (c) and 29(4)(b) of the Rules of the Supreme Court and the Court of Appeals. We find that Gooden's third argument pertaining to suppression of his incriminating statement has merit and therefore reverse.

On February 19, 1985, Louisiana officials arrested Gooden and his cousin, Howard Parette, Jr., for possession with intent to deliver approximately 227 pounds of marijuana. Pursuant to information that the marijuana confiscated in Louisiana might have come from Arkansas and that Parette owned land in Faulkner County, officers in Arkansas conducted an investigation which led to the issuance of a search warrant for the Parette property. That search led to the discovery of marijuana, a marijuana manufacturing operation, and certain items implicating Gooden in the manufacturing operation. Gooden, who was out on bond in Louisiana, was again arrested and confined in that state on February 22 pursuant to charges filed in Arkansas.

On February 27 the deputy prosecuting attorney for Faulkner County went to Louisiana accompanied by Arkansas and federal law enforcement officers who wanted to question Gooden. After a plea agreement was negotiated between Gooden, his Louisiana attorney, and the deputy prosecutor, Gooden made an incriminating statement which was later transcribed by one of the officers. The plea agreement was never adhered to, and extradition proceedings were initiated sometime in September of 1985. An order for Gooden's extradition was entered in Louisiana in June of 1986, and Gooden was returned to Arkansas on June 23 and brought to trial on September 4.

## I. *SPEEDY TRIAL*

On the day of trial Gooden moved to dismiss for lack of a speedy trial pursuant to Rule 28.1(c) of the Arkansas Rules of Criminal Procedure, which in relevant part provides:

> Any defendant charged with an offense in circuit court . . . shall be entitled to have the charge dismissed with an absolute bar to prosecution if not brought to trial within eighteen (18) months from the time provided in Rule 28.2, excluding only such periods of necessary delay as are authorized in Rule 28.3.

Approximately eighteen months and thirteen days had expired between the filing of charges on February 22, 1985, and the trial date of September 4, 1986. Once it was shown that trial was to be held after the speedy trial period had expired, the State had the burden of showing that any delay was the result of Gooden's conduct or was otherwise legally justified. *Harwood* v. *Lofton*, 288 Ark. 173, 702 S.W.2d 805 (1986); *Walker* v. *State*, 288 Ark. 52, 701 S.W.2d 372 (1986); *Williams* v. *State*, 275 Ark. 8, 627 S.W.2d 4 (1982).

In response to Gooden's motion the State introduced extradition materials which indicated that Gooden had refused to sign a waiver of extradition in Louisiana on April 10, 1986, which resulted in additional court proceedings in that state. The extradition issue was not resolved until the Louisiana court order of June 3, 1986, directing that Gooden be extradited to this state. Gooden argues that the materials were not properly received into evidence and were not certified. However, the record shows that the materials were marked and received into evidence, and the objection as to certification did not come until after the evidence was received (Gooden never obtained a ruling on his objection). See *Boone* v. *State*, 282 Ark. 274, 668 S.W.2d 17 (1984). The trial court denied the speedy trial motion on the basis of Gooden's absence from the state and on the grounds that the motion was not timely.

The speedy trial motion, which can be made at any time before trial, was clearly timely. *Duncan* v. *State*, 294 Ark. 105, 740 S.W.2d 923 (1987); *Garrison* v. *State*, 270 Ark. 426, 605 S.W.2d 467 (Ark. App. 1980); Ark. R. Crim. P. 30.2. However, the trial court was otherwise correct in denying the motion.

Rule 28.3(e) specifically excludes from the 18 month time limit those periods of delay resulting from the absence or unavailability of the defendant whenever his whereabouts are known but his presence for trial cannot be obtained or he resists being returned to the state for trial. It is clear that a delay of 54 days was attributable to Gooden's conduct in fighting extradition which constitutes resisting return within the meaning of Rule 28.3(e). *Allen* v. *State*, 294 Ark. 209, 742 S.W.2d 886 (1988); *O'Riordan* v. *State*, 281 Ark. 424, 665 S.W.2d 255 (1984). The trial court was therefore correct in holding that the speedy trial

period had not expired.

■   Citing *Shaw* v. *State*, 18 Ark. App. 243, 712 S.W.2d 338 (1986), Gooden makes the additional argument that the trial court erred in failing to set forth the number of excludable days in a written order or docket entry as required by Rule 28.3(i), which provides:

> All excluded periods shall be set forth by the court in a written order or docket entry. The number of days of the excluded period or periods shall be added to the number of months applicable to the defendant as set forth in Rule 28.1(a), (b) and (c) to determine the limitations and consequences applicable to the defendant.

Granted the trial court did not adhere to the requirements of the rule, the issue was never presented at the trial level. This court does not consider arguments made for the first time on appeal. *Allen, supra; Stephens* v. *State*, 293 Ark. 366, 738 S.W.2d 91 (1987).

## II. *UNLAWFUL SEARCH*

Gooden next argues that the court erred in denying his motion to suppress evidence obtained as the result of an unlawful search. He raises numerous points challenging the warrant authorizing the search, the finding of probable cause to issue the warrant, the affidavit in support of the warrant, and the scope of the search. The State's response is that Gooden does not have standing to challenge the search as all evidence was seized on property belonging to Parette, not Gooden. The deplorable state of the record on the issue of standing is such that it is difficult if not impossible to determine from the briefs whether Gooden resided on the Parette property so that he might be said to have had an expectation of privacy sufficient to give him the standing necessary to challenge the search.

At various times before the trial Gooden maintained a position entirely inconsistent with the claim that he resided on the Parette property and that he had a possessory interest in hundreds of items seized during the search. During the suppression hearing, the State maintained that Gooden did not have standing to object to the search. Gooden then asserted for the first time that

he actually lived on the property, after which the court permitted him to raise his objections to the search based upon that assertion. However, the matter was never developed at trial nor did the trial court ever resolve the issue by formally ruling on whether Gooden had standing. Our review of the record reveals little if any actual evidence that Gooden did more than frequent the property and possibly manage the manufacturing operation.

In *State* v. *Hamzy*, 288 Ark. 561, 709 S.W.2d 397 (1986), this court stated that the doctrine of standing to invoke the Fourth Amendment's exclusionary rule had evolved to focus on *the defendant's* substantive Fourth Amendment rights. Courts should not exclude evidence under the Fourth Amendment unless it is determined that an unlawful search violated the defendant's own constitutional rights. Those rights are so violated only if the challenged conduct invaded the defendant's legitimate expectation of privacy. In *Hamzy*, we quoted extensively from *Rakas* v. *Illinois*, 439 U.S. 128 (1978), and noted that "one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of [his] right to exclude." *Hamzy*, at 565. That same rationale is expressed in *Koonce* v. *State*, 269 Ark. 96, 598 S.W.2d 741 (1980).

While testimony of one of the witnesses indicates that an expired driver's license belonging to Gooden was found in the house on the Parette property, and parts of the typed summary of Gooden's oral confession suggest that Gooden was responsible for the overall manufacturing operation on the property, these facts do not establish that Gooden lawfully possessed or controlled the property or that he resided thereon. Though not abstracted, we find testimony by a witness residing on land adjoining the Parette property that a "neighbor" (Gooden) drove back and forth on the road leading to the property. Taken as a whole, however, the evidence of record is simply not such that this court is in a position to make a meaningful determination on the issue of standing which under the facts of this case is a necessary prerequisite to our consideration of Gooden's challenges to the warrant, the underlying affidavit, and the subsequent search. Since we are reversing on other grounds, we do not find it necessary to labor through the record in search of a final answer on the issue of standing as it is certain of examination in the event of retrial.

## III. *PLEA AGREEMENT AND INCRIMINATING STATEMENT*

█ Gooden argues that the court erred in failing to enforce the terms of his plea agreement entered into with his Louisiana attorney and the deputy prosecuting attorney for Faulkner County. In the alternative, Gooden argues that the court committed reversible error in denying his motion to suppress a written summary of his incriminating statement made in connection with the plea agreement and in allowing the interrogating officer, Ron Lewis, to testify as to the contents of the statement. In support of the latter argument, Gooden cites Rule 25.4 of the Rules of Criminal Procedure, which provides:

> No evidence of any discussion between the parties, of any statement made by the defendant, or of the fact that the parties engaged in plea discussions shall be admissible in any criminal . . . proceeding [with exceptions not applicable].
>
> . . . .
>
> Irrespective of whether a plea of guilty . . . is the result of a plea agreement, if it is not accepted or is withdrawn . . . neither the plea . . . nor any statement by the defendant *in connection with the making or acceptance of the plea* . . . is admissible in evidence against the defendant in any criminal [proceeding]. [Emphasis ours.]

Rule 410 of the Arkansas Rules of Evidence is essentially the same in purpose and effect. Although the written summary of Gooden's incriminating statement was not introduced at trial, it is obvious to us that Officer Lewis should not have been permitted to testify as to the contents of the statement. As such, we do not reach the contention that the court erred in failing to enforce the terms of the plea agreement.

█ In reviewing the admissibility of Gooden's statement, either as to the written summary or the testimony by Officer Lewis, this court makes an independent determination based upon the totality of the circumstances and reverses the actions of the trial judge only if it is found that the court's finding was clearly against a preponderance of the evidence. *Smith* v. *State*,

286 Ark. 247, 691 S.W.2d 154 (1985).

■ Gooden's motion sought suppression of the "introduction of *any* . . . custodial statements" made in connection with his plea agreement. (Emphasis ours.) During the hearing on the motion, the State tendered Officer Lewis' written summary of Gooden's incriminating statement, which the court ruled admissible in evidence. Gooden's counsel responded, "Your Honor, that's over my objection." Rather than introduce the written summary at trial, the State presented the statement through testimony by Lewis. We see no difference in the admissibility of the written summary as opposed to Lewis' testimony. Both are inadmissible under Rule 25.4 since Gooden's incriminating statement was made in connection with his plea agreement. Gooden's motion to suppress *any* statements should have been granted. The trial court committed reversible error in not doing so.

The State argues that the trial court's determination should be upheld because Gooden failed to present the Rule 25.4 argument to the trial court, he did not abstract the incriminating statement in his brief on appeal, and the incriminating statement was not made in reliance upon the plea negotiations. We disagree.

In support of Gooden's motion to suppress, it was specified that the statement was given in reliance upon and induced by the plea agreement entered into between Gooden and the prosecuting attorney, the details of which were included in the motion. Our general rule is that we do not consider issues raised for the first time on appeal, *Stephens, supra*, and objections at the trial court level must be sufficiently specific to apprise the court of the nature of the error complained of. *Cobbs* v. *State*, 292 Ark. 188, 728 S.W.2d 957 (1987). While Gooden may not have cited Rule 25.4 in his motion, our review of the proceedings and the underlying motion convinces us that the issue has been preserved for appellate review.

■ We are equally convinced that the incriminating statement was made in connection with the plea negotiations. At the suppression hearing Gooden stated that while in Louisiana on February 27 he refused to make a statement to officers until he had something "in writing." Gooden further stated that he did not give the officers his statement until his attorney indicated that

he had something in writing and Gooden could give a statement. It was conceded by the officers that Gooden's attorney was conferring with the prosecuting attorney as to the details of the plea agreement in the hall outside the room where Gooden was being detained for questioning. The officer who eventually took Gooden's statement admitted he knew negotiations were going on and that at one point Gooden's attorney came into the room and gave the "go ahead" for a statement from Gooden. Our review of the record convinces us that the evidence clearly preponderates in favor of a finding that the statement was made in connection with and in reliance upon the plea agreement.

█ The State's argument as to Gooden's failure to abstract the statement in his brief on appeal is misplaced, as is its reliance upon *Sutherland* v. *State*, 292 Ark. 103, 728 S.W.2d 496 (1987). The written statement was never introduced; rather, the State substituted the testimony of Officer Lewis, which was abstracted. In any event, we stated in *Sutherland* that any defect caused by failure to abstract an allegedly incriminating statement could be cured if the contents of the statement and its incriminating nature could be derived from other parts of the abstract.

In sum, Gooden's objection to the trial court's denial of his motion to suppress any custodial statements was sufficient to protect him at trial from Officer Lewis' testimony. His incriminating statement was made in connection with the plea agreement and, while the written summary of the statement was not introduced, the State was nonetheless able to place the contents of the statement before the jury through Lewis' testimony. We find this to be reversible error under Rule 25.4.

### IV. *CONVICTION OF CONSPIRACY TO MANUFACTURE, MANUFACTURE, AND POSSESSION WITH INTENT TO DELIVER*

Gooden argues that he could not be convicted of conspiracy to manufacture marijuana and the actual manufacturing of marijuana in light of Ark. Code Ann. § 5-1-110 (1987), formerly Ark. Stat. Ann. § 41-105 (Repl. 1977), which in part provides:

(a) When the same conduct of a defendant may establish the commission of more than one offense, the

defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:

(2) one offense consists only of a conspiracy, solicitation, or attempt to commit the other . . . .

Citing section 5-1-110(a)(1), Gooden also argues that he could not be convicted of manufacturing marijuana and possession of marijuana with intent to deliver as the same conduct establishes the commission of both offenses and, when one offense is included in the other, conviction may not be had for both. Because the facts as to the various charges may develop differently at the next trial, we do not reach these arguments at this time.

Reversed and remanded.

HICKMAN, HAYS and GLAZE, JJ., dissent.

TOM GLAZE, Justice, dissenting. I dissent. In my view, the majority makes a much better case than the appellant made for himself in this matter. The reason the appellant had difficulty in presenting a proper record on appeal is that the positions he took below were often inconsistent. For instance, the majority refers to the deplorable state of the record on the issue of standing in connection with appellant's argument that the court erred in denying his motion to suppress evidence obtained as a result of the unlawful search. This court's response to appellant's argument on this issue should be simple: Appellant presented *no* testimony at the suppression hearing by any witness that the appellant either owned, or was a tenant of, the Mayflower property, which was searched. In fact, the evidence presented is undisputed that this property was owned by Howard Phillip Parette, Jr. Appellant's counsel is the only person who made any statement (albeit unsupported), indicating the appellant lived on the Mayflower property. Actually, the majority court agrees that the appellant failed in any way to establish standing by the record before this court in this appeal and suggests that this issue will surely be reexamined at retrial.

As I see the standing issue, the appellant at both the pretrial and the trial on the merits made every effort to claim certain personal properties which were found on the Mayflower farm but in every other way chose not to be identified with the Mayflower property. Simply put, the truth is that, except for the personalty

he claimed that was found in the house at Mayflower, the appellant, for trial-strategy purposes, never claimed an interest, ownership or tenancy in the Mayflower property where the marijuana was found. Basically, the legal issue at trial became a factual one, and the trial judge decided it by ruling the appellant had no standing to challenge the search because he was not an owner or tenant. Even if the appellant changes his trial strategy on the retrial of this cause, the standing issue remains a factual one to be decided by the trial judge.

The majority court actually reverses this case holding that the trial court erred in admitting into evidence the appellant's incriminating statements which he claims were made in reliance upon a plea agreement entered into between him and the state. Again, appellant's point narrows itself to a factual issue which I believe was one correctly made by the trial judge. Instead, the majority court rejects the trial judge's ruling and holds that it is convinced that the appellant's incriminating statement was made in connection with the plea negotiations.

In making its factual decision, the majority points mainly to testimony given by the appellant. It is true that the appellant testified, at the suppression hearing, that, on the day he gave his statement, he refused to make any statement to officers until he had something in writing. However, contrary testimony was given by Officer Ron Lewis, who was the officer who took the appellant's incriminating statements. Lewis testified that he was never aware that the appellant made his statements based upon any sort of promise of a plea agreement and, in fact, said he believed the appellant made his statements because the appellant was "trying to take all of the responsibility for the marijuana operation in [Arkansas], rather than to incriminate his cousin, Dr. Phillip Parette, Jr."

Admittedly, the appellant's and the state's evidence on this issue was in conflict, concerning how and why the appellant gave his incriminating statements, but that was an issue the trial judge was required to, and did, make. The judge obviously did not believe the appellant's testimony and ruled in favor of the state. The majority, in my opinion, is wrong in reversing the trial judge on the fact question. I would affirm.

HICKMAN and HAYS, JJ., join this dissent.