Richard A. HUBBARD *v.* STATE of Arkansas

CR 90-262                                        812 S.W.2d 107

Supreme Court of Arkansas
Opinion delivered June 24, 1991

154

*Raymond R. Abramson*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. A'tty Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant shot his ex-wife, Paula M. Hubbard, in the presence of police officers at the parking lot of the McDonald's restaurant in Brinkley, Arkansas. Approximately one month after the shooting, the victim died and

appellant was charged by amended felony information with murder in the first degree, a violation of Ark. Code Ann. § 5-10-102 (1987). Appellant was tried and convicted by a Monroe County jury; he was then sentenced to life in prison without parole. He appeals the judgment of conviction of first-degree murder entered by the Monroe Circuit Court. We affirm.

There are five issues presented in this appeal. Appellant's counsel assigns four points of error to the trial court. We discuss these in the language and in the order in which they were presented to us. Finally, we discuss the issue of whether appellant received a speedy trial, an issue on which appellant received our permission to argue *pro se*.

I.

THE COURT ERRED IN ADMITTING DR. MICHAEL SIMON'S TESTIMONY EXPRESSING AN OPINION AS TO APPELLANT'S MENTAL CA-PACITY BECAUSE HE WAS NOT QUALIFIED AS A PSYCHIATRIST.

The only testimony offered by the state concerning appellant's mental capacity was that of Dr. Michael Simon, a forensic psychologist at the Arkansas State Hospital. Appellant claims Dr. Simon's opinion as to appellant's capacity to conform his conduct to the requirements of the law should not have been admitted because Dr. Simon is not a psychiatrist; appellant maintains the trial court's order for appellant's psychiatric evaluation required the evaluation be conducted by a psychiatrist. Appellant argues further that Dr. Simon's testimony did not comply with the requirement of the court's order and Ark. Code Ann. § 5-2-305 (1987) in that neither did he express an opinion as to whether appellant possessed the requisite culpable mental state for first-degree murder nor, in making his evaluation of appellant, did he consider any of appellant's prior psychiatric and psychological records.

Appellee responds by stating that the trial court's order tracks the language of section 5-2-305 and that while the order requires psychiatric evaluation of appellant, the statute does not so require. Appellee argues it is reasonable to assume that since the trial court's order tracks the statutory language, it intended

that the statutory procedure be followed. In support of this argument, appellee cites *Ball* v. *State*, 278 Ark. 423, 646 S.W.2d 693 (1983), for the proposition that there be substantial compliance with section 5-2-305.

■■ Appellant's challenge is to the admission of Dr. Simon's testimony. In evidentiary determinations, the trial court has wide discretion, and we will not reverse absent an abuse of that discretion. *State* v. *Massery*, 302 Ark. 447, 790 S.W.2d 175 (1990). Determinations of an expert's qualifications lie within the sound discretion of the trial court; the standard for measuring an expert's qualifications is flexible, and if some reasonable basis exists from which it can be said that the witness has knowledge of the subject beyond the knowledge possessed by ordinary persons, his testimony is admissible. *Bowden* v. *State*, 297 Ark. 160, 761 S.W.2d 148 (1988). As Dr. Simon is a forensic psychologist who evaluated appellant pursuant to the trial court's order, we cannot say the trial court abused its discretion in allowing Dr. Simon to testify concerning his evaluation of appellant's mental capacity. The trial court acted within its discretion in permitting Dr. Simon's testimony.

Whether Dr. Simon's evaluation substantially complied with the trial court's order appears to be a sub-issue argued by appellant. The trial court entered three commitment orders in this case. On October 7, 1988, the trial court entered an "Order for Commitment of Indigent Defendant for Psychiatric Examination." This order committed appellant to "the East Arkansas Regional Mental Health Center, Helena, Arkansas, as an outpatient, for expert medical and psychiatric observation, examination, and treatment." On February 16, 1989, the trial court entered a second "Order for Commitment of Indigent Defendant for Psychiatric Examination." *Inter alia*, this order acknowledged that the court had previously entered a commitment order on October 4, 1988, re-committed appellant to the East Arkansas Regional Mental Health Center, and stated:

5.

That the "psychological evaluation conducted by the East Arkansas Regional Mental Health Center does not address itself to the issue of the Defendant's lack of capacity; that it is necessary for the indigent defendant to

be evaluated by a qualified psychiatrist for a determination of his psychiatric state at the time of the offense alleged.

6.

That the defendant has informed his counsel that he has been institutionalized for psychiatric problems several times in the past, and the records from such former institutionalization should be made available to a qualified psychiatrist for a determination of his lack of capacity to commit the crimes with which he is charged.

Following these previous two orders, on October 6, 1989, the court entered *nunc pro tunc* an "Order for Commitment to the Arkansas State Hospital for Psychiatric Evaluation."

The relevant statute, section 5-2-305, states in pertinent part:

(a) Whenever a defendant charged in circuit court:

(1) Files notice that he intends to rely upon the defense of mental disease or defect, or there is reason to believe that mental disease or defect of the defendant will or has become an issue in the cause; or

(2) Files notice that he will put in issue his fitness to proceed, or there is reason to doubt his fitness to proceed, the court, subject to the provisions of §§ 5-2-304 and 5-2-311, shall immediately suspend all further proceedings in the prosecution. . . .

(b) Upon suspension of further proceedings in the prosecution, the court shall enter an order:

(1) Directing that the defendant undergo examination and observation by one or more qualified psychiatrists at a local regional mental health center or clinic; or

(2) Appointing at least one (1) qualified psychiatrist to make an examination and report on the mental condition of the defendant; or

(3) Directing the Director of the Arkansas State Hospital to examine and report upon the mental condition of the defendant; or

(4)   Committing the defendant to the Arkansas State Hospital or other suitable facility for the purpose of the examination for a period not exceeding thirty (30) days, or such longer period as the court determines to be necessary for the purpose.

(c)   Upon completion of an examination at a local regional mental health clinic or center pursuant to subsection (b) of this section or in lieu of such an examination, the court may enter an order providing for examination pursuant to subsections (b)(2) or (3) of this section and may further order the defendant committed to the Arkansas State Hospital for further examination and observation if the court determines that commitment and further examination and observation are warranted.

(d)   The report of the examination shall include the following:

(1)   A description of the nature of the examination;

(2)   A diagnosis of the mental condition of the defendant;

(3)   An opinion as to his capacity to understand the proceedings against him and to assist effectively in his own defense;

(4)   An opinion as to the extent, if any, to which the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired at the time of the conduct alleged; and

(5)   When directed by the court, an opinion as to the capacity of the defendant to have the culpable mental state that is required to establish an element of the offense charged.

The October 6, 1989 Commitment Order mirrors the language of section 5-2-305 and states that:

IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED that the Defendant shall be admitted to the Arkansas State Hospital for inpatient psychiatric evaluation to determine the competency of the

Defendant to stand trial on the charges filed herein; that the psychiatrist shall provide the Defendant, the State and the Court with an opinion as to the extent, if any, to which the capacity of the Defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired at the time of the conduct alleged; and also for an opinion as to the capacity of the Defendant to have the culpable mental state that is required to establish an element of the offense charged, namely, intent.

We have previously held that a trial court must substantially comply with the requirements of section 5-2-305. *Ball* v. *State*, 278 Ark. 423, 646 S.W.2d 693 (1983). In *Ball*, we held there was substantial compliance with the statute where a psychiatrist issued his report in the form of two letters. The letters contained all the statutorily required information, although they were not written in the language of the statute.

We adhere to the view that the statute requires substantial compliance. The trial court's actions did indeed substantially comply with section 5-2-305. We note that while parts of the statute speak in terms of "psychiatric" examination or "psychiatric" evaluation, section 5-2-305(b)(4) speaks only in terms of "the examination" which is to be conducted during a thirty day stay at the state hospital. Thus, the examination conducted during appellant's stay at the state hospital by Dr. Simon, who is admittedly a psychologist rather than a psychiatrist, substantially complies with the statute.

The record is abounding with evidence of the trial court's concern with appellant's psychiatric evaluation. The trial court committed appellant for evaluation, then re-committed him for further evaluation after having determined the initial evaluation was lacking in some respects. After the second commitment order was entered, the trial court, apparently still not satisfied with the report of appellant's evaluation, entered *nunc pro tunc* an order committing appellant to the state hospital for further psychological evaluation. At trial then, the court allowed Dr. Simon's testimony over appellant's objections. Given the detailed attention of the trial court to the issue of appellant's evaluation, we are confident the trial court was satisfied that Dr. Simon's testimony

was in substantial compliance with section 5-2-305. Again, we cannot say the trial court abused its discretion in allowing Dr. Simon's testimony.

## II.

### THE COURT ERRED BY ALLOWING THE PROSECUTING ATTORNEY TO CONFUSE THE JURY ON THE ISSUE OF STANDARDS FOR INVOLUNTARY COMMITMENT TO THE STATE HOSPITAL.

Dr. George Jones, witness for the defense and clinical psychologist at East Arkansas Regional Medical Health Center, testified that he examined appellant, pursuant to the trial court's order, to determine appellant's fitness to stand trial and aid in his defense. On cross-examination, during the same general discussion, Dr. Jones testified about the standards for both involuntary commitment to the state hospital and the standards for determining a mental disease or defect for criminal purposes.

Appellant relies on Ark. R. Evid. 403 and argues the standards concerning involuntary commitment are wholly irrelevant to the standards concerning the legal definitions of mental disease and defect and are of no probative value to this case, but serve only to confuse or mislead the jury. The trial court allowed Dr. Jones' testimony regarding the standards for involuntary commitment over appellant's relevance objection because Dr. Jones had referred to these standards in his written report.

Ark. R. Evid. 403 provides that although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. "The relevancy or prejudice matter must be decided by someone. The trial court has been assigned that responsibility in our system and it is the logical and proper place to make such determination. Unless that discretion is abused, we will not reverse the trial court." *Hoback* v. *State*, 286 Ark. 153, 158, 689 S.W.2d 569, 572 (1985). We cannot say the trial court abused its discretion here.

## III.

### THE COURT ERRED BY ALLOWING A SE-RIES OF LETTERS EXCHANGED BETWEEN AP-PELLANT AND HIS EX-WIFE, THE VICTIM, TO BE INTRODUCED INTO EVIDENCE.

During May and June of 1988, several months prior to the murder on September 9, 1988, appellant and his victim exchanged a series of letters relating their personal lives. These letters were admitted by the state as evidence of appellant's state of mind during the period after the divorce from his victim until the time he shot her.

Appellant argues the letters were too remote in time to the date of the offense to be relevant and that their probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. The balancing of probative value against prejudice is a matter left to the sound discretion of the trial court, and his decision on such a matter should not be reversed absent a manifest abuse of discretion. *Bennett* v. *State*, 297 Ark. 115, 759 S.W.2d 799 (1988). As the letters were written just a few months prior to the murder and as they related to appellant's motive or state of mind, we cannot say the trial court abused its discretion in admitting the letters into evidence.

## IV.

### THE COURT ERRED BY REFUSING TO GIVE A PROPOSED JURY INSTRUCTION TO THE EF-FECT THAT AN ACQUITTAL ON THE BASIS OF MENTAL DISEASE OR DEFECT WOULD NOT MEAN THAT APPELLANT BE SET FREE.

Appellant proffered a jury instruction concerning the consequences which result when a defendant is acquitted on the grounds of mental disease or defect. The trial court denied appellant's proposed instruction which was based on Ark. Code Ann. § 5-2-314 (1987). The proffered instruction stated that if appellant were acquitted on the ground of mental disease or defect, he would be committed to the custody of the Director of the Department of Human Services, and he would have the burden of proving by clear and convincing evidence that his

release therefrom would not create a substantial risk of bodily injury to another person or serious damage of property of another due to mental disease or defect.

We have held that a jury is not to be told the options available to the trial court when a defendant is found not guilty by reason of mental disease or defect. *Love* v. *State*, 281 Ark. 379, 664 S.W.2d 457(1984); *Curry* v. *State*, 271 Ark. 913, 611 S.W.2d 745 (1981). We have most recently affirmed this position in *Robertson* v. *State*, 304 Ark. 332, 802 S.W.2d 920 (1991).

Appellant concedes this argument is contrary to our present case law. However, appellant asks us to reverse the current law and adopt his view that since the jury is informed about the possible sentences if appellant were to be found guilty, the jury should also be informed about the nature and extent of the consequences to appellant should he be acquitted by reason of mental disease or defect. Appellant cites us to no authority supporting his position and we decline to reverse our current law to adopt his viewpoint. The trial judge was correct in refusing appellant's proposed instruction.

## V.

## SPEEDY TRIAL.

On motion, appellant received our permission to argue *pro se* the speedy trial issue. The dates which are relevant to the speedy trial date are as follows. On September 9, 1988, appellant was arrested for shooting his wife. On October 7, 1988, on appellant's motion, the trial court entered its first order committing appellant to the East Arkansas Regional Mental Health Center for psychiatric evaluation. On November 17, 1988, the East Arkansas Regional Mental Health Center issued its report of appellant's psychological evaluation. As a result of deficiencies in this report, a second order for commitment to the East Arkansas Regional Mental Health Center was entered on February 16, 1989. After experiencing delays in obtaining the ordered evaluation, an order for the commitment of appellant to the state hospital was entered on October 6, 1989 *nunc pro tunc* to February 16, 1989. On December 29, 1989, appellant filed a motion to dismiss on speedy trial grounds pursuant to Ark. R. Crim. P. 28.1 and 28.2(a). His motion was dismissed, and

appellant was tried on February 13, 1990.

Pursuant to Ark. R. Crim. P. 28.1, the state has twelve months from the time provided in Ark. R. Crim. P. 28.2 to bring appellant to trial, excluding only such periods of necessary delay as provided in Ark. R. Crim. P. 28.3. It is undisputed that the time for trial commenced running on September 9, 1988, the date of appellant's arrest. The trial was some five months after the speedy trial deadline.

■■ Once it is determined that a trial is held after the speedy trial date has expired, the state has the burden of showing that any delay was the result of appellant's conduct or was otherwise legally justified. *See Gooden* v. *State*, 295 Ark. 385, 749 S.W.2d 657 (1988). We hold the state has met its burden here. The period of delay resulting from an examination and hearing on the competency of the defendant is excludable from the twelve-month period. *Nelson* v. *State*, 297 Ark. 58, 759 S.W.2d 215 (1988); Ark. R. Crim. P. 28.3(a).

Here, the speedy trial date was September 9, 1989, and appellant was tried on February 13, 1990. Clearly then, with the period in excess of eight months excluded as a result of appellant's psychiatric evaluations, the state has complied with the speedy trial rules.

■ In holding that appellant was not denied a speedy trial, we note appellant's argument that the trial court failed to make a written order or docket entry stating the number of days to be excluded as required by Ark. R. Crim. P. 28.3(i). We have previously stated that a trial court should enter written orders or make docket notations specifying the reasons for the delays and the specific dates or number of days to be excluded. *Cox* v. *State*, 299 Ark. 312, 772 S.W.2d 336 (1989). However, we have also stated that a trial court's failure to comply with Ark. R. Crim. P. 28.3(i) does not result in automatic reversal. *McConaughy* v. *State*, 301 Ark. 446, 784 S.W.2d 768 (1990). When a case is delayed by the accused and that delaying act is evidenced by a record taken at the time it occurred, that record may be sufficient to satisfy the requirements of Ark. R. Crim. P. 28.3(i). *Id.*; see *Key* v. *State*, 300 Ark. 66, 776 S.W.2d 820 (1989); *Kennedy* v. *State*, 297 Ark. 488, 763 S.W.2d 648 (1989).

Here, the details relating the specifics of exactly when appellant was admitted for his various examinations, the length of his stay, and the date any reports were filed are absent from the record. However, the commitment orders entered in this case reveal that appellant made one petition for commitment and two motions for psychiatric evaluation. All three of these actions resulted in commitment orders and consequent psychiatric evaluations of appellant. Appellant cannot now complain about the delays he requested for psychiatric evaluation. We hold the record is sufficient to satisfy the requirements of Ark. R. Crim. P. 28.3(i).

As required by Ark. Sup. Ct. R. 11(f), the objections decided adversely to appellant have been abstracted; we have reviewed these objections and find that none of them merits reversal.

For the foregoing reasons, the denial of appellant's motion for new trial is affirmed.