STATE of Arkansas *v.* James L. SHEPPARD

CR 98-891                                   987 S.W.2d 677

Supreme Court of Arkansas
Opinion delivered March 18, 1999

*Mark Pryor*, Att'y Gen., by: *Kelly S. Terry*, Ass't Att'y Gen., for appellant.

*Theresa S. Nazario*, Deputy Public Defender, for appellee.

W H. "DUB" ARNOLD, Chief Justice. This case presents an interlocutory appeal from a trial court's order suppressing testimony regarding the appellee's verbal statements to an Arkansas State Police investigator. Our jurisdiction is authorized pursuant to Ark. Sup. Ct. Rule 1-2(a)(8) (1998) and Ark. R. App. P.—Crim. 3(a). The appellant State of Arkansas contends that the trial court clearly erred by applying an incorrect standard to determine the statements' admissibility. We agree, and we reverse.

On July 23, 1996, Kimberly Warren of the Arkansas State Police interviewed the appellee, James L. Sheppard, and his wife at Arkansas Childrens' Hospital regarding the possible battery of the Sheppard's eight-week old baby. Prior to taking appellee's statement, Warren mirandized Sheppard. Warren testified that her

standard procedure for investigating literate adults is to talk with the person, obtain information, write out a summary, and instruct the person to read the statement for accuracy and initial any additions or deletions to the statement. Following her interview with Sheppard, Warren wrote a statement summarizing the interview, and Sheppard read and signed the statement, making one correction. Subsequently, Sheppard was charged by information with first-degree battery.

During a hearing on June 20, 1997, Sheppard argued that the written statement was involuntary and moved for its suppression. He also disputed the truthfulness of the written statement. Ultimately, the trial court determined that the written statement was not admissible as Sheppard's statement because it was "not the statement of the defendant at all." Significantly, the trial court noted that it did not find any involuntariness in the taking of the statement but characterized the statement in the officer's words as "inherently nontrustworthy." Additionally, the trial court remarked that it suppressed the statement "not because what was said that day violates any Miranda or any voluntariness" but because "what we have here is suspect to the point that the State can't meet its burden of proving that this represents a voluntary statement of the defendant."

Following the suppression of the written statement, the State queried whether Investigator Warren could testify as to her memory of what Sheppard said during the interview. On May 11, 1998, the State filed a proffer of three statements that Investigator Warren would testify to based upon her "independent recollection" and not upon her "police report." Specifically, the proffer included the following expected testimony:

1. Mr. Sheppard told me that he was trying to get the baby to sleep and that he was feeling frustrated and tired.

2. Mr. Sheppard told me that he had slammed the baby down on his leg and he was sitting in front of a coffee table.

3. I then inquired if the baby could have hit the coffee table, and he stated, "Oh my God yes, that's what happened."

On May 20, 1998, the trial court suppressed Investigator Warren's proffered testimony. The trial court indicated that the testimony "absolutely lack[ed] the trustworthiness that statements ought to have to be admitted into evidence." Further, the trial court found it "absolutely· incredible that [Warren] could remember a statement being made that was much more damning than anything in the statement that she initially presented." From the trial court's order suppressing Investigator Warren's testimony, comes the instant appeal.

*Suppression of testimony regarding appellee's statement*

The State's sole point in this interlocutory appeal challenges the trial court's suppression of Investigator Warren's testimony regarding statements made by the appellee to Warren during an interview at Arkansas Childrens' Hospital. In *Gooden v. State*, 295 Ark. 385, 393, 749 S.W.2d 657, 662 (1988), we saw no difference in the admissibility of a written summary of a defendant's statement as opposed to witness testimony regarding that statement. Here, although the trial court ruled that the written statement was inadmissible, the State's subsequent attempt to introduce evidence regarding that statement, via Warren's testimony, marks a continuation or revisiting of the prior issue. Accordingly, we apply the same standard for determining the admissibility of Investigator Warren's testimony as we would apply in evaluating the admissibility of the written statement. *See Gooden*, 295 Ark. at 392-93, 749 S.W.2d at 661-62.

Notably, Sheppard moved to suppress Investigator Warren's testimony based upon a lack of voluntariness, but the trial court excluded the testimony because it believed that the statements were untrustworthy. The Due Process Clause of the Fourteenth Amendment requires that confessions be voluntary in order to be admissible at trial. Due process also requires that a defendant is entitled to "a fair hearing and a reliable determination on the issue of voluntariness, a determination *uninfluenced by the truth or falsity of the confession.*" *Jackson v. Denno*, 378 U.S. 368, 377 (1964) (citing *Rogers v. Richmond*, 365 U.S. 534 (1961)) (emphasis added). Accordingly, the State suggests that the trial court should have decided only whether Investigator Warren's conduct "was such as

to overbear [appellee's] will to resist and bring about confessions not freely self-determined." *See Rogers v. Richmond*, 365 U.S.534, 544 (1961). Significantly, that question should be answered "with complete disregard of whether or not [appellee] in fact spoke the truth." *Id.*

■ When we review the voluntariness of confessions, this court makes an independent determination based upon the totality of the circumstances and reverses the trial court only if its decision was clearly erroneous. *See Hood v. State*, 329 Ark. 21, 30, 947 S.W.2d 328, 333 (1997). In reaching its decision, this court may consider the accused's age, education, and intelligence, whether the accused was advised of his constitutional rights, the length of detention, the repeated and prolonged nature of questioning, the use of physical punishment, the statement of the interrogating officers, and the accused's vulnerability. *Hood*, 329 Ark. at 30-31, 947 S.W.2d at 333.

■ The State argues that the ultimate issue of the statement's reliability is a question for the jury as fact-finder and not for the trial court at a suppression hearing on voluntariness. *See Crane v. Kentucky*, 476 U.S. 683, 688 (1986). We agree. Here, the trial court acknowledged that it "automatically suspects any statement that is not recorded or not in the handwriting of the person giving the statement." However, this reasoning bears upon the statement's credibility, an issue of fact for the jury, and not upon the statement's voluntariness, an issue of law for the court.

■ Appellee cites *Moore v. State*, 321 Ark. 249, 253, 903 S.W.2d 154, 156 (1995), in support of its position that "[w]hen conflicting testimony concerning the circumstances of a confession is offered, it is the trial court's province to weigh the evidence and resolve the credibility of the witnesses." However, the *circumstances* of a confession relate to the issue of whether or not the statement was coerced or given voluntarily. None of the issues raised by the appellee concern any threat of coercion or other factor contributing to the statement's voluntariness. In fact, appellee's objections to Warren's competency as a witness and her capacity for truthfulness are matters that may be explored during cross-examination.

■ Here, the record indicates that the trial court improperly focused upon Warren's credibility as a witness and the truthfulness of the statement rather than the circumstances surrounding the giving of the statement. Given that the trial court found that appellee's statements were voluntary, Investigator Warren's testimony should have been admitted. The trial court was clearly erroneous in excluding Investigator Warren's testimony because it believed that she lacked credibility and that the statements were untruthful. Accordingly, we reverse.